610 P.2d 67

UNION CONSTRUCTION COMPANY, INC., an Arizona Corporation; Robert D. Evans and Sandra G. Evans, husband and wife, Appellants,

v.

BENEFICIAL STANDARD MORTGAGE INVESTORS, a California real estate investment fund, Appellee.

No. 1 CA–CIV 4174.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 22, 1980.

Rehearing Denied Feb. 22, 1980.

Review Denied March 18, 1980.

**434**

Steiger, Helm, Kyle & McConnell, by Gene L. Steiger, John D. Helm, Tempe, for appellants.

Jennings, Strouss & Salmon by F. William Sheppard, Neil Vincent Wake, Phoenix, for appellee.

## OPINION

FROEB, Presiding Judge.

This is a suit upon a promissory note secured by a deed of trust upon real property. Our inquiry is whether the suit is barred because the holder failed to qualify to do business in Arizona and, if it is not, whether the guarantors of the note are liable notwithstanding an extension of time for payment without their consent.

The note, in the original amount of $514,-000.00, was made by Traditional Development, Inc., an Arizona corporation, to Security Mortgage, Inc., an Arizona corporation, on a townhouse development. Appellants Robert D. Evans and Sandra G. Evans

(the guarantors) were stockholders of Traditional Development, Inc., and guaranteed the note which was secured by a deed of trust upon Arizona real property. Thereafter, the maker's interest in the note and deed of trust was assigned to appellee Union Construction Company, Inc., an Arizona corporation (Union). In addition, the payee's interest in the note and deed of trust was sold and assigned to appellee Beneficial Standard Mortgage Investors, a California business trust (Beneficial). In a suit on the note and to foreclose the deed of trust, the trial court awarded judgment in favor of Beneficial for $554,242.34 against both Union and the guarantors and ordered that the property be sold with any deficiency after sale to be paid by the guarantors. The sale resulted in a deficiency in excess of $400,000.00. The case was decided by summary judgment. Additional facts are hereafter related in the discussion of the issues.

■ Appellants contend that it was reversible error for the trial court to reconsider appellee's motion for summary judgment after it had been denied by another judge. As a general rule, the trial court should not reconsider a motion decided by another judge in the absence of new circumstances justifying a fresh examination. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977), *Mozes v. Daru*, 4 Ariz.App. 385, 420 P.2d 957 (1966). After reviewing the present record, we believe there existed sufficient reason for the trial court to reconsider this case some 2½ months later. We therefore find no error in reconsideration of the motion. As for the motion itself, appellants argue that there exists genuine issues of material fact and that it was error for the court to resolve them without a trial. In light of our resolution of other issues hereafter discussed, there is no merit to this contention and we find that the trial court properly decided the case as a matter of law.

■ Appellants' next question is whether a foreign business trust can qualify for the limited exemption from licensing available to foreign corporations under A.R.S. § 10–

485.[1] They argue that A.R.S. § 10–485 by its express terms applies only to foreign *corporations*. They point out that business *trusts* are not corporations and that the legislature intended they be regulated by the provisions of A.R.S § 10–501, *et seq.*, not A.R.S. § 10–485. Beneficial counters by referring us to A.R.S. § 10–509,[2] arguing that by virtue of this section A.R.S. § 10–485 is made applicable to business trusts. It is undisputed that Beneficial acquired the note and mortgage on May 19, 1972, at a time when it had satisfied the requirements of A.R.S. § 10–485, but had not complied with the provisions of A.R.S. §§ 10–501 through 10–509.

This is a question of first impression in Arizona; consequently, we are not referred to any Arizona cases which would be helpful in resolving the issue.

We note first that in several instances in the business trust statute, business trusts are required to meet the technical and filing requirements applicable to domestic and foreign corporations. This is some indication that the legislature intended that business trusts "fit into" the statutory scheme applicable to domestic and foreign corporations. *See, generally*, A.R.S. §§ 10–504 and 10–505. More persuasive are the specific provisions of A.R.S. § 10–509 (see footnote 2). There the legislature has stated that business trusts "[S]hall be subject to such

applicable provisions of law from time to time in effect with respect to domestic and foreign corporations . . . ." The section then includes "without limitation" such matters as "filing of required statements or reports," "general grants of power to act," "right to sue and be sued," and "rights to acquire, mortgage, sell, lease, operate and otherwise deal in or with real and personal property." We find this language makes A.R.S. § 10–485 applicable to business trusts. Contrary to appellants' argument, there is no conflict between the filing provisions of A.R.S. § 10–485 and the filing provisions of A.R.S. § 10–504 (now repealed) because they are directed to different licensing concepts. A.R.S. § 10–485 is a "short form" licensing provision limited to lending transactions. A.R.S. § 10–501, *et seq.*, provides for full licensing for all business transactions, not just lending transactions. We do not find conflict between these two statutes any more than there is conflict between A.R.S. § 10–485 and the statute which authorizes foreign *corporations* to fully qualify for all transactions (formerly A.R.S. § 10–481, now A.R.S. § 10–106, *et seq.*). This conclusion is consistent with the legislative purpose of A.R.S. § 10–485, which is to facilitate the availability of funds to Arizona borrowers. With this purpose in mind, there appears no reason why a loan by a foreign business

1. A.R.S. § 10–485 (since repealed as of July 1, 1976) provided as follows:

 Power to lend money, collection procedure
 A. A foreign corporation may, without being licensed to do business in this state, advance and lend money in the state, and take and hold notes, bonds, mortgages or trust deeds given to represent or secure money so lent or advanced or for other lawful consideration, and to enforce collection thereof, and such notes, bonds, mortgages or trust deeds shall be as valid and enforceable as though owned by an individual.
 B. Prior to advancing or lending money as provided in subsection A such foreign corporation shall file in the office of the corporation commission a statement in writing by a general officer of the corporation that it constitutes and appoints each member of the corporation commission its agent upon whom all notices, pleadings, and process may be served, and that when the commission is

so served it shall constitute lawful personal service on such corporation.
 C. The right to enforce collection of the instruments described in subsection A shall include the right to acquire the mortgaged property upon foreclosure, and to dispose thereof.

2. A.R.S. § 10–509 is as follows:
 Any business trust shall be subject to such applicable provisions of law from time to time in effect with respect to domestic and foreign corporations, respectively. These shall include, without limitation, such applicable provisions of law as relate to the issuance of securities, filing of required statements or reports, service of process, general grants of power to act, withdrawal, right to sue and be sued, limitation of individual liability of shareholders, and rights to acquire, mortgage, sell, lease, operate and otherwise deal in or with real and personal property.

trust ought not to be facilitated to the same extent as a loan by a foreign corporation. Appellants argued that the statutes pertaining to business trusts were created in order to allow taxation of their income on a favorable basis, in effect bringing state income taxation into harmony with federal tax treatment. We do not agree with appellants' suggestion that differences in income taxation present a basis for construing these statutes differently.

■ The next issue we reach is whether the transaction here involved comes within A.R.S. § 10–485. Appellants argue that the evidence presented in opposition to the motion for summary judgment raises an issue of fact as to whether the acquisition by Beneficial of the note and deed of trust was an "investment" rather than a "loan," thereby preventing the transaction from coming within A.R.S. § 10–485. The undisputed facts are that a loan transaction originated with Security Mortgage, Inc., which advanced funds to the borrower. The note and deed of trust were later sold and assigned to Beneficial. We hold that this transaction comes within A.R.S. § 10–485(A) and that there is no genuine issue of material fact asserted which would make this determination anything other than a question of law in this case.

■ A related and more difficult question is whether the protection afforded Beneficial in this transaction by reason of A.R.S. § 10–485 is lost on a showing that Beneficial engaged in *other* business transactions in Arizona which do not come within A.R.S. § 10–485.

This argument relates to the effect of A.R.S. § 10–482 (now repealed) which stated: "No foreign corporation [and hence no business trust by reason of the operation of A.R.S. § 10–509] shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void." Appellants contend that Beneficial cannot claim the pro-

tection of A.R.S. § 10–485 because it transacted non-lending business without complying with A.R.S. § 10–481 [3] (now repealed). Assuming that the record demonstrates at least a fact issue as to whether Beneficial did or did not transact non-lending business without qualifying, we hold that compliance with A.R.S. § 10–485 protects Beneficial from the effects of *A.R.S. § 10–482 as to those lending transactions coming within its terms. Neither side refers us to any cases dealing with this precise question. Our holding gives full recognition to A.R.S. § 10–485 which we believe the legislature intended. Loan transactions are given a "safe harbor" under this statute which would be derogated if non-lending business transactions were held to invalidate it. No good reason exists to hold otherwise.*

■ Appellants assert that the trial court abused its discretion in denying certain requests for discovery prior to entry of summary judgment. We find no merit to this issue because the sought-for discovery related essentially to an inquiry as to the nature and extent of business transactions of a non-lending character engaged in by Beneficial in Arizona. Since we have held that such transactions, if shown, do not invalidate the protection of A.R.S. § 10–485, discovery was correctly denied by the trial court. As to other sought-for discovery not precisely within this theory, the record does not reveal that discovery was improperly denied as to any matters relevant and material to the controlling issues in the case.

■ Appellants next argue that the determination that Beneficial is entitled to an exemption under A.R.S. § 10–485 results in an unconstitutional application of that statute. They point to art. 14, § 5 of the Arizona Constitution [4] which provides that "No corporation organized outside of the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by

---

**3.** Former A.R.S. § 10–481, referred to as a "long-form" qualification, provided for filing and other requirements in order to qualify a foreign corporation to do business.

**4.** This article has been held to apply to business trusts. *Rubens v. Costello*, 75 Ariz. 5, 251 P.2d 306 (1952); *Reilly v. Clyne*, 27 Ariz. 432, 234 P. 35 (1925).

law for similar corporations organized under the laws of this State . . . ." Appellants contend that this provision is violated when a foreign business trust can conduct its business in Arizona by satisfying A.R.S. § 10–485, whereas an Arizona business trust must obtain full licensing in accordance with A.R.S. §§ 10–501 through 10–509. We reject the argument, however, on the authority of *Bezat v. Home Owners' Loan Corp.*, 55 Ariz. 85, 98 P.2d 852 (1940). Here, as there, it is clear that the provision of the constitution quoted does not refer to the qualifying steps a corporation or business trust must take *prior* to transacting business, but to the conditions under which, after qualifying, it transacts business, "[A] very different thing." 55 Ariz. at 91, 98 P.2d at 855.

We turn to the final issue, which relates to the liability of the guarantors under their guaranty. The note here involved reads, in part, as follows:

The makers and endorsers severally waive diligence, presentment, protest and demand, notice of protest, dishonor and non-payment of this note, [and] *expressly agree that this Note, or any payment thereunder, may be extended from time to time* . . . all without in any way affecting the liability of the makers and endorsers hereof. (emphasis added).

The note was dated May 19, 1972, and due January 19, 1973 (245 days). It was extended to May 13, 1973 (114 additional days, or a cumulative total of 359 days), with the written consent of the guarantors.

The note was again extended to January 15, 1974 (an extension of 247 days, for a cumulative total of 606 days), again with the written consent of the guarantors. Finally, a third extension was given to January 15, 1975 (an extension of 365 days, for a cumulative total of 971 days); however, on this occasion there was no consent by the guarantors in writing.

The guarantors argue that the language "from time to time" in the note must be construed as authorizing only a single extension not longer than the original term of the note. They concede that under prior Arizona law (Uniform Negotiable Instruments Act) a guarantor on a note remained liable as an accommodation-maker when the term of the note was extended without notice to him if the note contained a general consent to extension. They also concede that the language "from time to time and without notice" was sufficient under prior law to permit the grant of a number of extensions without the consent of the guarantor. *See Maestro Music, Inc. v. Rudolph Wurlitzer Company*, 88 Ariz. 222, 354 P.2d 266 (1960). The guarantors argue, however, that under the Uniform Commercial Code, which was in effect during the transaction involved herein, a general consent to extension is deemed to be a consent only to a single extension for no longer than the original term of the note. For this they refer us first to A.R.S. § 44–2573 (U.C.C. 3–606), the Arizona Uniform Commercial Code provision providing that a guarantor is discharged if the holder, without the guarantor's consent, grants the maker an extension of time for payment without having reserved his rights under the guarantee. We are then referred to A.R.S. § 44–2518(6) (U.C.C. 3-118), which reads:

Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers. A holder may not exercise his option to extend an instrument over the objection of a maker or acceptor or other party who in accordance with § 44–2571 tenders full payment when the instrument is due.

and to the official code comment to U.C.C. 3–118, which states, in relevant part:

7. Subsection (f): *This provision is new.* It has reference to such clauses as "The makers and indorsers of this note consent that it may be extended without notice to them." *Such terms* usually are inserted to obtain the consent of the indorsers and any accommodation maker to extension which might otherwise discharge them under Section 3–606 dealing with impairment of recourse or collateral.

. . . *Where consent to extension has been given, the subsection provides that unless otherwise specified the consent is to be construed as authorizing only one extension for not longer than the original period of the note.* (emphasis added). From these, guarantors argue that a consent provision which does not consent to extension for a specific period or permit computation of a specific period, is ambiguous. They argue the language "from time to time" is thus ambiguous and must be construed in accordance with A.R.S. § 44-2518(6), allowing only a single extension for not longer than the original term of the note. The guarantors refer us, however, to no cases supporting this argument.

Beneficial contends that the language "from time to time" plainly authorizes multiple extensions of time and not merely a single extension. It argues that this language places the consent-to-extension provision in the "unless otherwise specified" category, freeing it from an interpretation as a single-extension provision required by A.R.S. § 44-2518(6).

 We hold that the consent-to-extension provision authorizing extensions "from time to time" satisfies the "unless otherwise specified" language of A.R.S. § 44-2518(6) and justifies multiple extensions of time without release of the guarantors. A.R.S. § 44-2518(6) is a rule of construction which supplies meaning where the instrument involved is otherwise ambiguous. It would be a contortion to say that by reason of a statutory rule of construction a single extension only is authorized when *without question* the words "from time to time" in the promissory note contemplate multiple extensions. They are words of common speech; they mean "at intervals; now and then." *Florey v. Meeker,* 194 Or. 257, 240 P.2d 1177 (1952). We agree with the holding of the Florida District Court of Appeals involving precisely the same question in *Bay National Bank and Trust Co. v. Mason,* 349 So.2d 810 (Fla. App.1977). It would be incorrect to fall back upon a statutory rule of construction limiting the holder of a note to one extension when the agreed-to provision or the note itself contemplates the potential of more than one extension.

█ In so holding, we reject the argument of the guarantors that to preclude the operation of the statutory rule of construction in A.R.S. § 44-2518(6) it is necessary that multiple extension language be specific as to the time periods authorized. Regardless of how the rule of construction in the statute might apply in other situations, there is nothing contained in the statute which suggests that time limits are essential to a multiple extension provision in a note. If the absence of time limits to extensions is an ambiguity, it is not an ambiguity which A.R.S. § 44-2518(6) purports to resolve by a rule of construction in multiple extension situations.

For the foregoing reasons, the judgment is affirmed.

CONTRERAS and RICHARD K. MANGUM, JJ., concur.

NOTE: The Honorable RICHARD K. MANGUM, Coconino County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S.Const. Art. VI, § 3.