**In re John SANDERS and Mary Ellen Sanders, Debtors.**

**Mary Ellen SANDERS, Plaintiff,**

**v.**

**STEPHENS SECURITY BANK, Defendant.**

**Bankruptcy No. ED 84–90M.**
**AP No. 85–185M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Jan. 21, 1987.

See also, Bkrtcy., 75 B.R. 751, Bkrtcy., 75 B.R. 757 and Bkrtcy., 75 B.R. 761.

Isaac A. Scott, Jr., Little Rock, Ark., for debtors.

Joseph Hickey, El Dorado, Ark., for plaintiff.

Allen P. Roberts, Camden, Ark., for defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On November 1, 1984, John and Mary Ellen Sanders filed a joint voluntary petition for relief under the provisions of chapter 11. Because of the potential conflict of interest, separate counsel was employed by each of the debtors-in-possession. On May 6, 1985, Mrs. Sanders filed this complaint to set aside Stephens Security Bank's (Stephens) claim of lien on a certificate of deposit and to determine that Mrs. Sanders' liability on a note had been discharged.

Other actions were filed by Mrs. Sanders against The Merchants and Planters Bank, Camden, Arkansas, AP 85–183M, AP 85–188M and AP 85–189M, and the First National Bank of Camden, Arkansas, (FNB), AP 85–184M, AP 85–186M and AP 85–187M. All of these adversary proceedings were consolidated for trial by agreement. A separate memorandum opinion will be issued in each case.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

Mrs. Sanders was born and raised in Camden. She lived and worked in New Orleans for about six years after graduating from college but has not worked from the time of her marriage to Mr. Sanders in 1968 until after the petition was filed. Mr. and Mrs. Sanders moved to Camden in 1969.

Mrs. Sanders inherited as her separate property substantial amounts of property from her father's estate. She also acquired separate property from her mother.

On October 24, 1983, Mr. and Mrs. Sanders executed a promissory note to Stephens in the principal sum of $35,000.00. Interest accrued on the unpaid principal balance at the rate of 13.5% per annum. The note was due to be repaid in one installment consisting of principal and all accrued interest on January 23, 1984. The loan proceeds were delivered to Mr. Sanders for use in the operation of his business of constructing and operating a motel in Camden, Arkansas. Mrs. Sanders received none of the proceeds from the loan.

A $25,000.00 certificate of deposit was purchased in Mrs. Sanders' name at FNB

on October 3, 1983. The maturity date was 182 days after October 3, 1983. The certificate of deposit was purchased with her separate funds. In order to secure the repayment of the above-stated indebtedness of Mr. Sanders to FNB, Mrs. Sanders assigned the certificate of deposit to Stephens as collateral on October 26, 1983. The assignment document was executed by both Mr. and Mrs. Sanders. Possession of the certificate of deposit was transferred by Mrs. Sanders to Stephens. When the FNB certificate of deposit matured, Stephens cashed it and purchased a new $25,-000.00 certificate of deposit No. 5235 on April 18, 1984, at Stephens in Mrs. Sanders' name.

After the October 24, 1983, note became due, Mr. Sanders paid the interest current and executed an extension agreement which extended the note due date to April 22, 1984. On May 1, 1984, Mr. Sanders paid interest current and executed another extension agreement which extended the due date to July 22, 1984. In addition, the interest rate was increased to 14% per annum. On October 19, 1984, Mr. Sanders paid interest current and signed an extension agreement which extended the due date of the note to April 22, 1985. Mrs. Sanders never signed an extension agreement nor was she ever advised by her husband or Stephens that the due date of the note was being extended. Mrs. Sanders testified that she never gave her consent to the extensions and that she assumed this obligation was being satisfied from the operation of the motel in Camden.

The assignment document which assigned the original certificate of deposit reflected that it was "security for Thirty-five thousand and no/00" and that "[t]his assignment shall be a continuing one and shall be effective for any renewals of above loan until same is entirely paid."

### I

### MRS. SANDERS' STATUS: MAKER OR ACCOMMODATION MAKER?

Both sides have presented arguments on the issue of whether Mrs. Sanders signed the note as an accommodation maker or primary maker.

Ark.Stat.Ann. § 85-3-606(1)(a) (Add. 1961) provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the h .der

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary.

Courts which have considered the question of whether the defenses under Uniform Commercial Code § 3-606 are available only to accommodation parties are divided. *Compare Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744, 749 (3rd Cir.1985) (§ 3-606 is meant to apply only to parties who act as sureties and to co-makers who sign a note to accommodate the primary obligor and who have a right of recourse against the primary obligor) *with Bishop v. United Missouri Bank of Carthage,* 647 S.W.2d 625, 629 (Mo.App. 1983) (plain unambiguous language of statute makes defenses available to any party to the instrument including co-makers). The Supreme Court of Arkansas has held specifically that the defenses under Ark. Stat.Ann. § 85-3-606 (Add.1961) are available to both makers and accommodation parties. *Rushton v. U.M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81 (1968). Regardless of Mrs. Sanders' status, under Arkansas law she is entitled to assert the defenses available pursuant to Ark.Stat.Ann. § 85-3-606 (Add.1961).

### II

### DISCHARGE OF NOTE LIABILITY

Mrs. Sanders argues that she should be released from liability on the note because

the due date was extended and the interest rate raised without her knowledge or consent. If the due date of a note is extended without the consent of a party eligible to rely on U.C.C. § 3–606 that party is discharged from liability to the holder of the note. *Holcomb State Bank v. Adamson*, 107 Ill.App.3d 908, 63 Ill.Dec. 704, 708, 438 N.E.2d 635, 639 (1982); *First Nat. Bank of Layton v. Egbert*, 663 P.2d 85, 87 (Utah 1983); *Varga v. Woods*, 381 N.W.2d 247, 252 (S.D.1986).

The due date of the ninety-day promissory note was originally January 22, 1984, and was extended by an agreement between Mr. Sanders and Stephens as recited above.

Stephens argues that Mrs. Sanders is deemed to have given her consent to the two extensions of the due date because of a printed provision in the note which provides as follows:

EACH SIGNER LIABLE. If there is more than one person signing this note each will be jointly and individually liable for the whole obligation. *Each will pay the note even if you agree with the other to renew or extend it, revise its terms or release any security.* (emphasis added).

The proper interpretation of this provision is governed by Ark.Stat.Ann. § 85–3–118(f) (Add.1961). This subsection provides, in part, as follows:

Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers.

Comment 7 of the Official Comments to Ark.Stat.Ann. § 85–3–118 (Add.1961) states, in part, as follows:

Subsection (f): This provision is new. It has reference to such clauses as "The makers and indorsers of this note consent that it may be extended without notice to them." Such terms usually are inserted to obtain the consent of the indorsers and any accommodation maker to extension which might otherwise discharge them under Section 3–606 dealing with impairment of recourse or collateral. An extension in accord with these terms binds secondary parties.

The question presented is the proper interpretation of the "EACH SIGNER LIABLE" provision. There are three interpretations possible for this provision: (1) the provision cannot reasonably be construed to grant any consent to extension of the due date; (2) the provision can reasonably be construed to grant consent, but because the provision is ambiguous, Ark.Stat.Ann. § 85–3–118 (Add.1961) limits the consent to one extension; or (3) the provision can reasonably be construed to unambiguously grant consent to unlimited extensions.

The determinative language in the note is "Each will pay the note even if you agree with the other to renew or extend it." No case construing this precise language has been found. Some note provisions have been construed to constitute consent to unlimited extensions without release of the guarantor. *Union Const. Co. v. Bene. Standard Mortg. Inv.*, 125 Ariz. 433, 610 P.2d 67, 71 (App.1980) ("expressly agree that this note or any payment thereunder may be extended from time to time"); *Bay Nat. Bank & Trust Co. v. Mason*, 349 So.2d 810, 811 (Fla.App.1977) ("And all endorsers and sureties agree that this note may in whole or in part be extended or renewed after maturity from time to time without notice to them and without release of their liability thereon."); *Brazosport Bank of Texas v. Travis*, 617 S.W.2d 729 (Tex.Civ.App.1981) ("any extension or renewal will not affect the liability of any of the co-makers or guarantors"); *Carney v. Central Nat. Bank of Greencastle, Indiana*, 450 N.E.2d 1034, 1035 (Ind.App. 1983) ("that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me"); *Taines v. Capital City First Nat. Bank*, 344 So.2d 273, 276 (Fla.App.1977), *cert. denied*, 355 So.2d 517 (Fla.1978) ("the undersigned also agrees to any extensions or renewals of this note without further notice").

█ The "EACH SIGNER LIABLE" provision of the Stephens' note is so ambig-

uous it cannot be construed to grant any consent by Mrs. Sanders to extension of the original note term. The only reasonable construction affordable to the "EACH SIGNER LIABLE" provision is that Mr. and Mrs. Sanders remain liable on the note even if they agree among themselves to release the other upon a renewal, extension, revision or release of security. Since Mrs. Sanders did not consent to any extension, she is discharged from liability on the note pursuant to Ark.Stat.Ann. § 85–3–606(1)(a) (Add.1961).

Even if the "EACH SIGNER LIABLE" provision of the note were construed as Mrs. Sanders granting consent to extend the note, Ark.Stat.Ann. § 85–3–118 (Add. 1961) would limit the consent to only one extension. Stephens and Mr. Sanders extended the note two times. Therefore, Mrs. Sanders would be discharged from liability on the note under either of the first two interpretations.

The "EACH SIGNER LIABLE" provision cannot reasonably be construed to unambiguously grant consent to unlimited extensions.

### III

### NOVATION

Mrs. Sanders also argues that the execution of the extension agreement constitutes a novation which releases her on the original note. In order for there to be a novation there must be a clear and definite intention to substitute a new debt for an old debt. *Ward v. Worthen Bank & Trust Co., N.A.*, 284 Ark. 355, 681 S.W.2d 365 (1984); *Taines v. Capital City First Nat. Bank*, 344 So.2d at 276. There is absolutely no evidence of the intent of Stephens to accomplish a novation. This argument is without merit.

### IV

### RELEASE OF STEPHENS' LIEN

Mrs. Sanders argues that if her liability on the note is discharged, Stephens' lien on her certificate of deposit is automatically released. This argument overlooks the fact that Stephens' lien in Mrs. Sanders' certificate of deposit is based on a written obligation, the assignment, which is separate from the note and which is not governed by the articles of the Uniform Commercial Code—Commercial Paper. *See* Ark.Stat.Ann. § 85–3–103 and 104 (Add. 1961).

The assignment agreement is a contract of guaranty. For a contract of guaranty to be valid, there must be consideration. *Pacific Industries, Inc. v. Mountain Inn, Inc.*, 232 F.Supp. 801 (W.D.Ark.1964). The principal contract or loan is sufficient consideration for the guaranty contract if the guaranty was "executed before or contemporaneously with the execution of a primary debt obligation." *Pacific Industries, Inc. v. Mountain Inn*, 232 F.Supp. at 809. *See also In re Farmers' Co-Op of Ark. and Okl., Inc.*, 43 B.R. 619 (Bkrtcy.W.D. Ark.1984), *aff'd*, No. 84–2363, slip op. at 1 (W.D.Ark. August 22, 1985), *aff'd*, Nos. 85–2146 and 85–2198, slip op. at 2 (8th Cir. June 18, 1986) [794 F.2d 680 (table)]. Also a benefit to a party other than the mortgagor is sufficient consideration to support enforcement of the mortgage. *Sims v. First National Bank, Harrison*, 267 Ark. 253, 263, 590 S.W.2d 270, 276 (1979); *Matter of Rose*, 17 B.R. 55, 58 (Bkrtcy.W.D. Ark.1981). A mortgage by a married woman on her separate property to secure her husband's present and future debts is valid and enforceable. *Sims v. First National Bank, Harrison*, 267 Ark. at 253, 590 S.W.2d at 270. These principles of law governing realty would be applicable to liens on personal property.

Since Mrs. Sanders received no compensation to execute the assignment, she is an uncompensated guarantor and is entitled to have her undertaking strictly construed. She cannot be held liable beyond the strict terms of her contract. *Worthen Bank & Trust Co., N.A. v. Utley*, 748 F.2d 1269 (8th Cir.1984); *National Bank of Eastern Ark. v. Collins*, 236 Ark. 822, 826, 370 S.W.2d 91 (1963).

The assignment document states that it is given as security for the repayment of "$35,000.00." The testimony is undisputed

that this figure refers to a loan dated October 24, 1983, in the principal sum of $35,000.00, due in full on January 22, 1984, with interest accruing at the rate of 13.5% per annum. The assignment also states that the certificate of deposit would be security for any renewals of the loan until the note was entirely paid.

The second extension by Mr. Sanders not only extended the due date but increased the interest rate from 13.5% per annum to 14% per annum. Two issues are raised. One, whether the increase of the interest rate is a material alteration of the note. And two, whether Mrs. Sanders consented to an alteration of the terms of the original note in her contract of guaranty.

An alteration of a principal contract is material if the guarantor is placed in a position of being required to do more than her original undertaking. *Vogel v. Simmons First Nat. Bank of Pine Bluff*, 15 Ark.Ct.App. 69, 689 S.W.2d 576, 580 (1985). When a material alteration in an obligation is made without the consent of the uncompensated guarantor, the guarantor is discharged from liability. *Moore v. First Nat. Bank of Hot Springs*, 3 Ark.Ct. App. 146, 623 S.W.2d 530 (1981); *Worthen Bank & Trust Co., N.A. v. Utley*, 748 F.2d at 1269; *In re Farmers' Co-Op of Ark. and Okl., Inc.*, 43 B.R. at 619. An increase in the interest rate of the principal debt without the consent of the uncompensated guarantor increases the guarantor's obligation and, therefore, discharges the guarantor. *See In re Stewart*, 52 B.R. 281 (Bkrtcy.W.D.N.Y.1985); *Miami National Bank v. Fink*, 174 So.2d 38 (Fla.App.), *cert. denied*, 180 So.2d 658 (Fla.1965).

A guarantor may be deemed to have consented in advance to the increase in the interest rate on the principal obligation if the guaranty agreement specifically grants consent. This assignment provides only that it is "for any renewals of the above loan." There is no reference in any of the documents regarding an increase of the interest rate. If the parties had intended the assignment agreement to secure repayment of the principal debt and interest at a higher rate than the original rate, they could have agreed to this in advance or Stephens could have obtained Mrs. Sanders' consent before increasing the interest rate. By increasing the interest rate without Mrs. Sanders' consent, Stephens has released Mrs. Sanders' obligation under the assignment.

V

AGENCY RELATIONSHIP

Stephens argues that the evidence establishes that at all times Mr. Sanders was acting as agent or partner of Mrs. Sanders and, therefore, his consent to the extension of the due date and the increase of the interest rate constituted consent by Mrs. Sanders. This argument of an agency relationship is not supported by the evidence in the case.

VI

CONCLUSION

Mrs. Sanders' liability on the note is discharged, and the lien of Stephens in Mrs. Sanders' certificate of deposit No. 5235 and any lien against a renewal of certificate of deposit No. 5235 is released.

IT IS SO ORDERED.