In re John SANDERS and Mary Ellen Sanders, Debtors.

Mary Ellen SANDERS, Plaintiff,

v.

The MERCHANTS AND PLANTERS BANK, CAMDEN, ARKANSAS, Defendant.

Bankruptcy No. ED 84–90M.
Adv. No. 85–188M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Jan. 21, 1987.

Isaac A. Scott, Jr., Little Rock, Ark., for debtors.

Joseph Hickey, El Dorado, Ark., for plaintiff.

Allen P. Roberts, Camden, Ark., for defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On November 1, 1984, John and Mary Ellen Sanders filed a joint voluntary petition for relief under the provisions of chapter 11. Because of the potential conflict of interest, separate counsel was employed by each of the debtors-in-possession. On May 6, 1985, Mrs. Sanders filed this complaint against The Merchants & Planters Bank, Camden, Arkansas, (M & P) to determine that her liability on a note had been discharged.

Other actions were filed by Mrs. Sanders against M & P, AP 85–183M and AP 85–189M, the First National Bank of Camden, Arkansas, AP 85–184M, AP 85–186M and AP 85–187M, and Stephens Security Bank, AP 85–185M.

All of these adversary proceedings were consolidated for trial by agreement. A separate memorandum opinion will be issued in each case.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

Mrs. Sanders was born and raised in Camden. She lived and worked in New Orleans for about six years after graduating from college but has not worked from the time of her marriage to Mr. Sanders in 1968 until after the petition was filed. Mr. and Mrs. Sanders moved to Camden in 1969.

Mrs. Sanders' father was an attorney for M & P and a member of the board of directors of M & P before his death in 1975. Mrs. Sanders inherited as her separate property substantial amounts of property from her father's estate. She also acquired separate property from her mother.

On September 23, 1983, Mr. and Mrs. Sanders executed a promissory note to M & P in the principal sum of $25,000.00. Interest accrued on the unpaid principal balance at the rate of 13% per annum. The note was due to be repaid in one installment consisting of principal and all accrued interest on March 21, 1984. The loan proceeds were delivered to Mr. Sanders for use in the operation of his business of constructing and operating a motel in Camden, Arkansas. Mrs. Sanders received none of the proceeds from the loan.

On March 21, 1984, Mr. Sanders paid the interest current. Mr. and Mrs. Sanders executed an extension agreement which extended the note due date to September 17, 1984. The interest rate in the extension was not altered from the original note.

On August 23, 1984, Mr. Sanders executed an additional extension agreement which extended the due date of the note to February 19, 1985, and also increased the interest rate to 14% per annum. The August 23 extension agreement reflects that Mr. Sanders paid the accrued interest.

Mrs. Sanders testified that she had no knowledge of nor gave her consent to the August 23 extension. She assumed this obligation had been satisfied from the operation of the motel in Camden. Witnesses for M & P testified that Mr. Sanders was requested to secure the signature of Mrs. Sanders on the August 23 extension agreement. Mr. Sanders testified that he did not recall the circumstances surrounding the execution of this extension agreement.

## I

## MRS. SANDERS' STATUS: MAKER OR ACCOMMODATION MAKER?

Both sides have presented arguments on the issue of whether Mrs. Sanders signed the note as an accommodation maker or primary maker.

Ark.Stat.Ann. § 85–3–606(1)(a) (Add. 1961) provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary.

Courts which have considered the question of whether the defenses under Uniform Commercial Code—Commercial Paper § 3–606 are available only to accommodation parties are divided. *Compare Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744, 749 (3rd Cir.1985) (§ 3–606 is meant to apply only to parties who act as sureties and to co-makers who sign a note to accommodate the primary obligor and who have a right of recourse against the primary obligor) *with Bishop v. United Missouri Bank of Carthage,* 647 S.W.2d 625, 629 (Mo.App.1983) (plain unambiguous language of statute makes defenses available to any party to the instrument including co-makers). The Supreme Court of Arkansas has held specifically that the defenses under Ark.Stat.Ann. § 85–3–606 (Add.1961) are available to both makers and accommodation parties. *Rushton v. U.M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81 (1968). Regardless of Mrs. Sanders' status, under Arkansas law she is entitled to the defenses available pursuant to Ark.Stat.Ann. § 85–3–606 (Add.1961).

## II

### DISCHARGE OF NOTE LIABILITY

Mrs. Sanders argues that she should be released from liability on the note because the due date was extended and the interest rate raised without her consent.

If the due date of a note is extended without the consent of a party eligible to rely on U.C.C. § 3–606 that party is discharged from liability to the holder of the note. *Holcomb State Bank v. Adamson,* 107 Ill.App.3d 908, 63 Ill.Dec. 704, 708, 438 N.E.2d 635, 639 (1982); *First Nat. Bank of Layton v. Egbert,* 663 P.2d 85, 87 (Utah 1983); *Varga v. Woods,* 381 N.W.2d 247, 252 (S.D.1986).

The due date of the promissory note was originally September 23, 1983, and was extended by an agreement between Mr. and Mrs. Sanders and M & P, the first time and by an agreement between Mr. Sanders and M & P the second time.

M & P argues that Mrs. Sanders is deemed to have given her consent to the extension of the note due date because of a printed provision in the note which provides as follows:

OBLIGATIONS INDEPENDENT—I understand that my obligation to pay this note is independent of the obligation of any other person who has also agreed to pay it. You may release any of us, release any security, waive any right you might have against any of us, extend new credit to any of us, *renew this note, or all of the above, without affecting my obligation to pay the loan amount.* (emphasis added).

The proper interpretation of this provision is governed by Ark.Stat.Ann. § 85–3–118(f) (Add.1961). This subsection provides, in part, as follows:

Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers.

Comment 7 of the Official Comments to U.C.C. § 85–3–118 states as follows:

Subsection (f): This provision is new. It has reference to such clauses as "The makers and indorsers of this note con-

sent that it may be extended without notice to them." Such terms usually are inserted to obtain the consent of the indorsers and any accommodation maker to extension which might otherwise discharge them under Section 3–606 dealing with impairment of recourse or collateral. An extension in accord with these terms binds secondary parties.

The question presented is the proper interpretation of the "OBLIGATIONS INDEPENDENT" provision. There are three interpretations possible for this provision: (1) the provision cannot reasonably be construed to grant any consent to extension of the due date; (2) the provision can reasonably be construed to grant consent, but because the provision is ambiguous, Ark.Stat.Ann. § 85–3–118 (Add.1961) limits the consent to one extension; or (3) the provision can reasonably be construed to unambiguously grant consent to unlimited extensions.

The determinative language in the note is "[y]ou may ... renew this ... without affecting my obligation to pay the loan amount." No case construing this precise language has been found. Some note provisions have been construed to constitute consent to unlimited extensions without release of the guarantor. *Union Const. Co. v. Bene. Standard Mortg. Inv.*, 125 Ariz. 433, 610 P.2d 67, 71 (App.1980) ("expressly agree that this note or any payment thereunder may be extended from time to time"); *Bay Nat. Bank & Trust Co. v. Mason*, 349 So.2d 810, 811 (Fla.App.1977) ("And all endorsers and sureties agree that this note may in whole or in part be extended or renewed after maturity from time to time without notice to them and without release of their liability thereon."); *Brazosport Bank of Texas v. Travis*, 617 S.W.2d 729 (Tex.Civ.App.1981) ("any extension or renewal will not affect the liability of any of the co-makers or guarantors"); *Carney v. Central Nat. Bank of Greencastle, Indiana*, 450 N.E.2d 1034, 1035 (Ind.App. 1983) ("that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me"); *Taines v. Capital City First Nat. Bank*, 344 So.2d 273, 276 (Fla.App.1977), *cert. denied*, 355 So.2d 517 (Fla.1978) ("the undersigned also agrees to any extensions or renewals of this note without further notice").

■ The "OBLIGATIONS INDEPENDENT" provision can reasonably be construed to grant consent to renew the note. The language does not unambiguously grant consent to unlimited extensions. The note contains no language such as "all extensions, extensions or extend the note from time to time" which would grant consent to unlimited extensions. Therefore, consent to extend the note would be limited to one extension pursuant to Ark.Stat.Ann. § 85–3–118 (Add.1961).

■ The first extension on March 21, 1984, of the note was signed by Mrs. Sanders and, therefore, she gave actual consent to the extension. The second extension of the note on August 23, 1984, was not signed by Mrs. Sanders. This extension is the one extension allowed by Ark.Stat.Ann. § 85–3–118 (Add.1961).

The second extension not only extended the due date but altered the interest rate to 14% which was higher than the original note. The "OBLIGATIONS INDEPENDENT" provision contains no language regarding an increase in the interest rate. Under Arkansas law, alteration in a negotiable instrument is governed by Ark.Stat. Ann. § 85–3–407 (Add.1961) which provides in pertinent part:

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect.

....

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

The first issue is whether the alteration of the interest rate is material. The second issue is whether the alteration of the interest rate is fraudulent.

■ Mrs. Sanders' agreement with M & P was to repay the obligation with interest at a rate of 13% per annum. By increasing the interest rate to 14% per annum without the consent of Mrs. Sanders, M & P changed the contract between the parties. This alteration is a material change. Ark. Stat.Ann. § 85–3–407(1) (Add.1961).

■ Even though the alteration is material, there is absolutely no evidence of actual fraud in increasing the interest rate on behalf of Mr. Sanders or M & P as required by statute. Mr. Sanders simply failed to inform her that he had renewed the note at a higher interest rate.

■ Ark.Stat.Ann. § 85–3–407(2)(b) governs these facts. Since the alteration is material, but not fraudulent, Mrs. Sanders is not discharged from liability on the note. The note may be enforced according to its original tenor which was principal plus interest due at a rate of 13% per annum. Mrs. Sanders remains liable on the note at the original rate of interest.

## III

## NOVATION

■ Mrs. Sanders also argues that the execution of the extension agreement constitutes a novation which releases her on the original note. In order for there to be a novation there must be a clear and definite intention to substitute a new debt for an old debt. *Ward v. Worthen Bank & Trust Co., N.A.,* 284 Ark. 355, 681 S.W.2d 365 (1984); *Taines v. Capital City First Nat. Bank,* 344 So.2d at 276. There is absolutely no evidence of the intent of M & P to accomplish a novation. This argument is without merit.

## IV

## AGENCY RELATIONSHIP

■ M & P argues that the evidence establishes that at all times Mr. Sanders was acting as agent or partner of Mrs. Sanders and, therefore, his consent to the extension of the due date and the increase of the interest rate constituted consent by Mrs. Sanders. This argument of an agency relationship is simply not supported by the evidence in the case.

## V

## CONCLUSION

Mrs. Sanders remains liable on the note to repay the principal debt plus interest computed at 13% per annum.

IT IS SO ORDERED.