**In re John SANDERS and Mary Ellen Sanders, Debtors.**

**Mary Ellen SANDERS, Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF CAMDEN, ARKANSAS, Defendant.**

**Bankruptcy No. ED 84-90M.**
**Adv. No. 85-186M.**

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Jan. 21, 1987.

Isaac A. Scott, Jr., Little Rock, Ark., for debtors.

Joseph Hickey, El Dorado, Ark., for plaintiff.

Allen P. Roberts, Camden, Ark., for defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On November 1, 1984, John and Mary Ellen Sanders filed a joint voluntary petition for relief under the provisions of chapter 11. Because of the potential conflict of interest, separate counsel was employed by each of the debtors-in-possession. On May 6, 1985, Mrs. Sanders filed this complaint to set aside First National Bank of Camden, Arkansas' (FNB), mortgage on the South ½ of the Southeast ¼ of Section 36, Township 13 South, Range 19 West, Ouachita County, Arkansas, and to determine that Mrs. Sanders' liability on note No. 90–67834 has been discharged.

Other actions were filed by Mrs. Sanders against The Merchants and Planters Bank, Camden, Arkansas, AP 85–183M, AP 85–188M and AP 85–189M, FNB, AP 85–184M and AP 85–187M, and the Stephens Security Bank, AP 85–185M. All of these adversary proceedings were consolidated for trial by agreement. A separate memorandum opinion will be issued in each case.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). The Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

Mrs. Sanders was born and raised in Camden. She lived and worked in New Orleans for about six years after graduating from college but has not worked from the time of her marriage to Mr. Sanders in 1968 until after the petition was filed. Mr. and Mrs. Sanders moved to Camden in 1969.

Mrs. Sanders inherited as her separate property substantial amounts of property from her father's estate. She also acquired separate property from her mother.

On April 7, 1982, John Sanders, Inc., Architect, a closely held corporation owned solely by Mr. Sanders, executed a promissory note to FNB in the sum of $50,000.00. The note was signed John Sanders, Inc., Architect, by John Sanders. Mrs. Sanders signed the note as an endorser. The note provided that interest accrued at FNB's prime rate but in no event less than 12% per annum. The note was due to be repaid in one installment of principal and all accrued interest on demand and if no demand then ninety days from April 7, 1982.

Also, on April 7, 1982, Mr. and Mrs. Sanders executed a mortgage on Mrs. Sanders' separate property having the following property description:

The South ½ of the SE¼ of Section 36, Township 13 South, Range 19 West, situated in Ouachita County, Arkansas.

This mortgage was given to secure the repayment of the above stated indebtedness. The mortgage was properly recorded. The mortgage has not been released of record.

Mr. Sanders, on behalf of John Sanders, Inc., Architect, executed an extension agreement on July 6, 1982, extending the due date of the note ninety days from July 6, 1982. John Sanders, Inc., Architect, also paid $2,034.24 interest at the time of the execution of the extension. The note was also extended by Mr. Sanders on behalf of John Sanders, Inc., Architect, on October 15, 1982, January 17, 1983, April 14, 1983, August 4, 1983, November 9, 1983, February 7, 1984, and June 11, 1984. Over the period of the various extensions the principal balance was reduced to $39,000.00 and all accrued interest paid. The interest rate was also adjusted upward several times by virtue of the extension agreements. All payments of principal and interest were made by John Sanders, Inc., Architect. At no time was Mrs. Sanders advised that the due date was being extended or the interest rate increased.

## I

### MRS. SANDERS STATUS AS AN ACCOMMODATION ENDORSER

Both sides have presented arguments on the issue of whether Mrs. Sanders signed the note as an accommodation maker or primary maker.

Ark.Stat.Ann. § 85–3–606(1)(a) (Add. 1961) provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent ᵗʰe holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary.

Courts which have considered the question of whether the defenses under Uniform Commercial Code § 3–606 are available only to accommodation parties are divided. *Compare Federal Deposit Ins. v. Blue Rock Shopping Center*, 766 F.2d 744, 749 (3rd Cir.1985) (§ 3–606 is meant to apply only to parties who act as sureties and to co-makers who sign a note to accommodate the primary obligor and who have a right of recourse against the primary obligor) *with Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625, 629 (Mo.App. 1983) (plain unambiguous language of statute makes defenses available to any party to the instrument including co-makers). The Supreme Court of Arkansas has held specifically that the defenses under Ark. Stat.Ann. § 85–3–606 (Add.1961) are available to both makers and accommodation parties. *Rushton v. U.M. & M. Credit Corporation*, 245 Ark. 703, 434 S.W.2d 81 (1968). Regardless of Mrs. Sanders' status, under Arkansas law she is entitled to assert the defenses available pursuant to Ark.Stat.Ann. § 85–3–606 (Add.1961).

## II

### DISCHARGE OF NOTE LIABILITY

Ark.Stat.Ann. § 85–3–606(1)(a) and (2)(a), (b) and (c) (Add.1961) provide as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary.

(2) By express reservation of rights against a party with a right of recourse the holder preserves

(a) all his rights against such party as of the time when the instrument was originally due; and

(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others.

If the due date of the note is extended without the consent of a party eligible to rely on U.C.C. § 3–606 that party is discharged from liability to the holder of the note. *Holcomb State Bank v. Adamson*, 107 Ill.App.3d 908, 63 Ill.Dec. 704, 708, 438 N.E.2d 635, 639 (1982); *First Nat. Bank of Layton v. Egbert*, 663 P.2d 85, 87 (Utah 1983); *Varga v. Woods*, 381 N.W.2d 247, 252 (S.D.1986).

Mr. Sanders' note was payable on demand but if no demand was made then the note was due ninety days from April 7, 1982. The due date of the note was extended numerous times by agreements between Mr. Sanders and FNB as recited above.

FNB argues that Mrs. Sanders is deemed to have given her consent to the extension of the due date because of a printed provision in the note which provides as follows:

### ENDORSEMENT—SECURED

In consideration of the making at the request of the undersigned of the loan evidenced by the note hereon, the undersigned hereby jointly and severally endorse said note and do guarantee the payment thereof and bind themselves to and with First National Bank of Camden, Arkansas, its successors, endorsers or assigns, for the prompt payment of the said note when due and hereby consent to the terms and conditions of the said note and that the collateral security for the said note may be exchanged for other collateral, or surrendered in whole or in part from time to time, and *that the time of payment of said note or of any of the security therefor may be extended, or the rate of interest changed without notice to or further assent from the undersigned, and that the undersigned will remain bound hereon notwithstanding such change, substitution, surrender or extension.* (emphasis added).

The proper interpretation of this provision is governed by Ark.Stat.Ann. § 85–3–118(f) (Add.1961). This subsection provides, in part, as follows:

Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers.

Comment 7 of the Official Comments to Ark.Stat.Ann. § 85–3–118 (Add.1961) states, in part, as follows:

Subsection (f): This provision is new. It has reference to such clauses as "The makers and indorsers of this note consent that it may be extended without notice to them." Such terms usually are inserted to obtain the consent of the indorsers and any accommodation maker to extension which might otherwise discharge them under Section 3–606 dealing with impairment of recourse or collateral. An extension in accord with these terms binds secondary parties.

The question presented is the proper interpretation of the "ENDORSEMENT–SE-

CURED" provision. There are three interpretations possible for this provision: (1) the provision cannot reasonably be construed to grant any consent to extension of the due date; (2) the provision can reasonably be construed to grant consent, but because the provision is ambiguous, Ark. Stat.Ann. § 85–3–118 (Add.1961) limits the consent to one extension; or (3) the provision can reasonably be construed to unambiguously grant consent to unlimited extensions.

The determinative language in the note is "the time of payment of said note ... may be extended without notice to or further assent from the undersigned, and that the undersigned will remain bound hereon." No case construing this precise language has been found. Some note provisions have been construed to constitute consent to unlimited extensions without release of the guarantor. *Union Const. Co. v. Bene. Standard Mortg. Inv.*, 125 Ariz. 433, 610 P.2d 67, 71 (App.1980) ("expressly agree that this note or any payment thereunder may be extended from time to time"); *Bay Nat. Bank & Trust Co. v. Mason*, 349 So.2d 810, 811 (Fla.App.1977) ("And all endorsers and sureties agree that this note may in whole or in part be extended or renewed after maturity from time to time without notice to them and without release of their liability thereon."); *Brazosport Bank of Texas v. Travis*, 617 S.W.2d 729 (Tex.Civ.App.1981) ("any extension or renewal will not affect the liability of any of the co-makers or guarantors"); *Carney v. Central Nat. Bank of Greencastle, Indiana*, 450 N.E.2d 1034, 1035 (Ind.App. 1983) ("that said indebtedness may be compromised or renewed or extended from time to time at an increased rate of interest without notice to me"); *Taines v. Capital City First Nat. Bank*, 344 So.2d 273, 276 (Fla.App.1977), *cert. denied*, 355 So.2d 517 (Fla.1978) ("the undersigned also agrees to any extensions or renewals of this note without further notice").

■ The "ENDORSEMENT–SE-CURED" provision grants consent by Mrs. Sanders to extension of the due date but the provision cannot reasonably be construed to unambiguously grant consent to unlimited extensions. There is no language in the "ENDORSEMENT–SE-CURED" provision such as "the endorser agrees to extensions, extensions from time to time or any extension" which would allow application of interpretation (3). The parties' intent was made clear in regard to the collateral which could be surrendered "from time to time" but the same is not true as to extension of the due date. Because the extension term is ambiguous, Ark.Stat.Ann. § 85–3–118 (Add.1981) limits the consent of Mrs. Sanders to one extension. Therefore, Mrs. Sanders is discharged from liability on the note because of the execution of numerous extension agreements by Mr. Sanders without Mrs. Sanders' consent.

## III

### NOVATION

■ Mrs. Sanders also argues that the execution of the extension agreement constitutes a novation which releases her on the original note. In order for there to be a novation there must be a clear and definite intention to substitute a new debt for an old debt. *Ward v. Worthen Bank & Trust Co., N.A.*, 284 Ark. 355, 681 S.W.2d 365 (1984); *Taines v. Capital City First Nat. Bank*, 344 So.2d at 276. There is absolutely no evidence of the intent of FNB to accomplish a novation. This argument is without merit.

## IV

### RELEASE OF FNB'S MORTGAGE

Mrs. Sanders argues that the mortgage lien should be discharged under common law principles of suretyship. The mortgage given by Mrs. Sanders to secure her husband's debt is a contract of guaranty. For a contract of guaranty to be valid, there must be consideration. *Pacific Industries, Inc. v. Mountain Inn, Inc.*, 232 F.Supp. 801 (W.D.Ark.1964). The principal contract or loan is sufficient consideration for the guaranty contract if the guaranty was "executed before or contemporaneously with the execution of a primary debt

obligation." *Pacific Industries, Inc. v. Mountain Inn,* 232 F.Supp. at 809. *See also In re Farmers' Co-op of Ark. and Okl., Inc.,* 43 B.R. 619 (Bkrtcy.W.D.Ark. 1984), *aff'd,* No. 84–2363, slip op. at 1 (W.D.Ark. August 22, 1985), *aff'd,* Nos. 85–2146 and 85–2198, slip op. at 2 (8th Cir. June 18, 1986). Also a benefit to a party other than the mortgagor is sufficient consideration to support enforcement of the mortgage. *Sims v. First National Bank, Harrison,* 267 Ark. 253, 263, 590 S.W.2d 270, 276 (1979); *Matter of Rose,* 17 B.R. 55, 58 (Bkrtcy.W.D.Ark.1981). A mortgage by a married woman on her separate property to secure her husband's present and future debts is valid and enforceable. *Sims v. First National Bank, Harrison,* 267 Ark. at 253, 590 S.W.2d at 270.

■ Since Mrs. Sanders received no compensation to execute the mortgage, she is an uncompensated guarantor and is entitled to have her undertaking strictly construed. She cannot be held liable beyond the strict terms of her contract. *Worthen Bank & Trust Co., N.A. v. Utley,* 748 F.2d 1269 (8th Cir.1984); *National Bank of Eastern Ark. v. Collins,* 236 Ark. 822, 826, 370 S.W.2d 91 (1963).

The mortgage states that the property described is security for the April 7, 1982, promissory note in the amount of $50,000.00. The note was first extended on July 6, 1982, and the interest rate was altered from the prime rate but not less than 12% per annum to 16½% per annum. On October 15, 1982, another extension was executed and the interest rate was altered to return to the interest rate charged in the original note. Several other extensions were executed but the interest rate was kept at the original rate until the extension of June 11, 1984. That extension altered the interest rate to 14% per annum.

An alteration of a principal contract is material if the guarantor is placed in a position of being required to do more than her original undertaking. *Vogel v. Simmons First Nat. Bank of Pine Bluff,* 15 Ark.Ct.App. 69, 689 S.W.2d 576, 580 (1985). When a material alteration in an obligation

is made without the consent of the uncompensated guarantor, the guarantor is discharged from liability. *Moore v. First Nat. Bank of Hot Springs,* 3 Ark.Ct.App. 146, 623 S.W.2d 530 (1981); *Worthen Bank & Trust Co., N.A. v. Utley,* 748 F.2d at 1269; *In re Farmers' Co-Op of Ark. and Okl., Inc.,* 43 B.R. at 619. An increase in the interest rate of the principal debt without the consent of the uncompensated guarantor increases the guarantor's obligation and, therefore, discharges the guarantor. *See In re Stewart,* 52 B.R. 281 (Bkrtcy.W.D.N.Y.1985); *Miami National Bank v. Fink,* 174 So.2d 38 (Fla.App.), *cert. denied,* 180 So.2d 658 (Fla.1965).

■ The written terms of the contract of guaranty are contained in the "ENDORSE-MENT–SECURED" provision of the note and the mortgage instrument. The mortgage is silent regarding the consent of Mrs. Sanders to a change in the interest rate in the note. The "ENDORSEMENT-SECURED" provision of the note states that "the rate of interest [may be] changed without notice to or further assent from the undersigned." The previous discussion has already pointed out that this note provision is ambiguous in regard to the extensions of the due date. The "ENDORSE-MENT–SECURED" provision is equally ambiguous in regard to the consent to increase the interest rate because it is unclear whether Mrs. Sanders consented to one increase or unlimited increases. This ambiguity could easily have been avoided if FNB had obtained Mrs. Sanders' written consent to change the interest rate or drafted the guaranty in unambiguous language. Based on the above discussion, the mortgage lien must be released.

V

CONCLUSION

Mrs. Sanders is released from liability on the note, and the mortgage lien on the real property described below in favor of FNB is discharged.

S½ of SE¼ of Section 36, Township 13 South, Range 19 West, situated in Ouachita County, Arkansas.

IT IS SO ORDERED.