## Elkana GLOVER *v.* NATIONAL BANK OF COMMERCE OF PINE BLUFF

75-123                                             529 S.W. 2d 333

Opinion delivered November 3, 1975
[Rehearing denied December 8, 1975.]

*Reinberger, Eilbott, Smith & Staten,* for appellant.

*Bridges, Young, Matthews & Davis,* for appellee.

GEORGE ROSE SMITH, Justice. On October 17, 1972, the appellant Glover and his partner Ferguson, who were in the meat-packing business, borrowed $20,000 from the appellee bank and gave a 90-day note for the debt. The partnership was not doing well. Two or three days before the note was due Glover informed an officer of the bank that Ferguson was buying Glover's interest in the partnership (for $25,000 cash), that Ferguson was assuming all liabilities, and that

Glover did not want the note extended and would not sign a renewal note. Some five months later Ferguson went bankrupt, his estate in bankruptcy eventually paying $758.92 upon the note.

The bank brought this action against Glover to collect the amount due on the note. At the close of the proof the trial judge directed a verdict for the bank. Glover argues that the jury should have been allowed to decide (a) whether the bank discharged Glover's obligation by agreeing not to sue Ferguson and (b) whether the bank was estopped from pursuing its remedy against Glover by reason of its failure to collect the note by offsetting it against the meat-packing concern's checking account in the bank.

Neither point has merit. Upon point (a) the appellant cites Ark. Stat. Ann. § 85-3-606 (Add. 1961), which provides that the holder of an instrument "discharges any party to the instrument to the extent that without such party's consent the holder . . . agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse . . ." Of course the statute means an enforceable contract. Clark, Suretyship in the Uniform Commercial Code, 46 Tex. L. Rev. 453, 457 (1968). Here there is simply no proof that the bank made any sort of binding agreement that it would not sue Ferguson. All the proof shows is that the bank twice accepted from Ferguson a payment of interest after the note was due. That evidence does not satisfy the appellant's burden of proving that the bank made an enforceable promise not to sue Ferguson. The jury would have had no basis except speculation for finding that such an agreement existed; for no one so testified.

Upon point (b) the proof shows that on several days between the due date of the note and Ferguson's bankruptcy the meat-packer's checking account in the appellee bank briefly exceeded the amount of the note. The bank admittedly could have applied such funds in satisfaction of the note. *Rush v. Citizens Nat. Bk.*, 114 Ark. 170, 169 S.W. 777 (1914). But there was no duty upon the bank to do so. *Central Bank & Trust Co. v. Meltzer*, 145 So. 2d 766 (Fla. App., 1962); cf. *Peoples State Bank v. Caterpillar Tractor Co.*, 213 Ind. 235, 12

N.E. 2d 123 (1938). Moreover, there is no proof of an essential element of estoppel; that is, that Glover relied to his detriment upon the bank's failure to offset the two claims. Indeed, there is no proof that the possibility of an offset was ever mentioned by Glover or the bank's officers. The plain fact is that Glover was a principal obligor upon the note and sold his interest in the meat-packing partnership for $25,000. He never asked that the accounts be offset and certainly did not rely to his detriment upon the bank's failure to do so.

It is also argued that the trial court should have admitted into evidence copies of the meat packer's bank statements, showing that at times the amount in the checking account exceeded the amount of the note. Inasmuch as such proof would not have made a case for the jury, as we have seen, the admissibility of the bank statements becomes immaterial.

Affirmed.

HARRIS, C.J., and HOLT, J., not participating.