Seth WARD and SENTRY SALES & SERVICE, INC. *v.*
WORTHEN BANK & TRUST COMPANY, N.A.

84-150                                          681 S.W.2d 365

Supreme Court of Arkansas
Opinion delivered December 21, 1984
[Rehearing denied January 28, 1985.*]

*Barber, McCaskill, Amler, Jones & Hale,* for appellant.

HAYS, J., not participating.

*Allen, Cabe & Lester, P.A.,* for appellee.

WILLIAM A. ECKERT, Special Chief Justice. Prior to March 8, 1980, appellee Worthen Bank made six unsecured installment loans to appellant Ward, the loans being in connection with appellant's Datsun dealership. In November, 1980, appellant sold the dealership to Bart Roach Datsun, Inc., the sales agreement providing that the purchaser assume liability for the balance owed on the promissory notes to appellee and a note to Union Bank. Appellee bank provided separate financing to Roach and was aware of the loan assumption agreement, but did not release appellant from liability.

Appellee mailed installment notices to an address furnished by Roach, who made payments until July, 1982, when he encountered financial difficulties. Roach sold the agency for considerations including royalty of $75 on each Datsun/Nissan unit the purchaser sold for twenty years. This royalty was assigned by Roach to appellee bank and filed as a financing statement with the Secretary of State on August 6, 1982.

All notes assumed by Roach became deliquent in August, 1982. Union Bank demanded and received payment of its note from appellant in September, 1982.

Appellee had made secured loans to Roach, which, on default, were foreclosed. Appellant, having reacquired the right to possession of the premises leased to Roach, denied appellee access to conduct foreclosure sale until an agreement was made. Consideration for using the premises required the appellee convey to appellant certain furnishings and fixtures on the premises. The bank was given right to use the premises through September, 1982.

The agreement contains mutual releases of both parties, and provides:

". . . The Wards agree that they will not constitute or institute involuntary bankruptcy proceedings against Bart Roach or Bart Roach Datsun, Inc., nor will they

encourage, instigate or assist anyone else in such an endeavor."

Appellant was aware of the $75 royalty assignment when he made the rental agreement.

On October 19, 1982, appellee's officers discussed the several loans in default, including recognition that the royalty assignment held from Roach could be set aside as a preference should Roach become bankrupt within ninety days from its execution. A decision was made to be "mum" with reference to the loans.

On October 22, 1982, appellee's officer, by letter to Roach, wrote:

> ". . . We have your copy of the letter from Webb Hubbell concerning your obligation to Seth Ward which amounts to some $25,000. It is our plan, and I recommend that it be your plan, that we do nothing about this, just don't pay anything and delay talking about it. I am going to send a copy of this to our attorney to ask him to see where we stand in his mind legally and if there is something beneficial discovered, I will tell you . . .
>
> * * *
>
> We discussed the notes that are due us by Seth Ward, which amount to some $25,000 that we understand were assumed by you, but we were not informed and we did not accept any sort of a release of Seth. It is our plan to hold still on this for a while and work on Seth on getting those notes current come December time . . .

Appellee bank made demand on appellant for payment of all notes on December 17, 1982. This action followed, appellant counterclaimed for utility costs incurred by appellee under the rental agreement.

The Trial Court, sitting as a jury, rendered judgment for Appellee on its notes and on the counterclaim. Appellant

was given judgment in his third party claim against Roach.

Appeal comes under Supreme Court Rule 29(1) (c).

Appellant argues that appellee's conduct, specifically its intentional deferment in making demand on appellant while perfecting its rights in the royalty assignment, creates an estoppel.

Absent a duty otherwise imposed, the holder of a note is under no obligation to notify the maker of any deliquency. The printed installment notes each contain the following provision:

> "RIGHTS PRESERVED. You can delay or omit enforcing any of your rights at any time under this note without losing them in the future."

For appellant to establish estoppel, he has the burden, among other things, of proving:

> Appellee had a duty to notify appellant.
> Appellee failed to notify appellant.
> Appellee relied upon such failure to receive notice in good faith.

*Brixey* v. *Union Oil Company*, 283 F. Supp. 353 (D.C. Ark. 1968).

Appellant contends he would have sued both Roach and appellee had he known of the default in note payments and of the royalty assignment; however, appellant had stated on September 10, 1982, that he would be the last person to put Roach in bankruptcy, that he would take a judgment and wait for Roach to inherit money. Roach was substantially indebted to appellant. It was to appellant's interest that Roach not be discharged in bankruptcy.

Appellee's decision to delay collection procedure against appellants was made *subsequent* to the date of the rental agreement. That agreement, in any event, did not preclude appellant from *suing* Roach; it provided that

appellant not have Roach declared bankrupt.

Appellant was not in a confidential relationship with appellee. He had the right to determine the current status of his note obligations both from Roach and from appellee. He was actively engaged in matters related to Roach's financial condition; he was represented by eminent counsel.

While appellee's decisions to be "mum", to withhold making demand on appellants, and advising Roach to withhold payment of his debts, is deficient in candor, such conduct is not actionable as a matter of law.

Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment.

There are times when the law imposes a duty to speak rather than remain silent, when a failure to speak is the equivalent of fraudulent concealment. *Berkeley Pump Co.* v. *Reed-Joseph Land Co.* 279 Ark. 384, 653 S.W.2d 128 (1983):

> ". . . But this rule is based on special circumstances not evident here, such as a confidential relationship, so that a duty to speak arises where one party knows another is relying on misinformation to his detriment. The general rule is to the contrary, and ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud . . . must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information. (See 37 *Corpur Juris Secundum,* Fraud, § 15, p. 242 and Smith, "Law of Fraud", § 8 p. 18.) We find nothing in the abstract suggesting circumstances from which that rule of law might be found applicable. If fraud exists, whether affirmatively or by concealment, it ought not to be difficult to isolate and cite it . . . "

The party asserting estoppel must prove it strictly, there

must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment. *Martin, Inc.* v. *Indiana Refrigeration Lines, Inc.,* 262 Ark. 671, 560 S.W.2d 228.

We do not find estoppel.

Appellant additionally contends that there was a novation because the bank accpeted note payments from Roach and sent notices of installments due to Roach's address.

In order for there to be a novation it is necessary to show an *intent* on the part of the creditor to release an old debtor and substitute therefor a new debtor. *Simmons National Bank* v. *Dalton,* 232 Ark. 359, 337 S.W.2d 667. There must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement.

The clear and definite intention does not have to be express but may be implied:

> " 'It is not essential that the assent to and acceptance of the terms of the novation be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction, and in the conduct of the parties thereafter. Such consent is not to be implied merely from the performance of the contract by the substitute, for that might well consist with the continued liability of the original party, the substitute acting for the purpose in the capacity of agent for the original obligor.' " *Elkins* v. *Henry Vogt Mch. Co.,* 125 Ark. 6, 187 S.W. 663.

The appellee did not release appellant on the notes nor were new notes substituted. Appellant acknowledged his intention to remain personally liable after the debt had been assumed. Ward testified that if Worthen had notified him of the default he would have paid the notes.

There is not sufficient evidence of a novation.

Appellant also argues that Ark. Stat. Ann. § 85-3-606(1)

discharges him from liability during the time collection effort was suspended on the notes. The pertinent portions of the statute provide:

> "Impairment of recourse or of collateral. —(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of resourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; . . . "

This statute applies where there is an enforceable contract *not to sue* a liable party. *Glover* v. *National Bank of Commerce of Pine Bluff,* 258 Ark. 771, 529 S.W.2d 333 (1975).

There is no enforceable promise by appellee not to sue Roach. Further, Roach was not the maker of the note. The statute is not applicable here.

Appellant counterclaimed for utilities sued by the bank during the period of the rental agreement.

Generally, the consumer of public utilities services is liable in contract for the charges for such services. 64 Am. Jur. 2nd 596, "Public Utilities," § 60. Typically, the tenant will bear such expense. Appellant did not pay the utility charges; the amount and period of usage by the bank is disputed; the utility company is not a party to this action.

The rental agreement provides:

> "6.  Worthen and the Wards mutually release each other from any and all claims, obligations or rights that they may have against each other arising from the lease

of the property at Second and Broadway . . . "

From the evidence presented we do not find that the Trial Court's judgment was clearly erroneous.

Affirmed.

Special Justice LEWIS EPLEY joins in this opinion.

HUBBELL, C.J., and HAYS, J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice. dissenting. Roach assumed the notes here in question in November, 1980, at the time he agreed to purchase the dealership from Ward. Appellee took the assignment, agreed to collect from Roach, and did so until Roach defaulted in August of 1982. Appellee foreclosed on other notes which Roach owed to it but not on the notes executed by Ward in favor of appellee and assumed by Roach in the transfer agreement.

Roach sold the agency in August, 1982, and as part of the consideration he was to receive a $75.00 royalty on each vehicle sold by the dealership for the next twenty years. Roach assigned these royalty payments to appellee as part of his effort to pay his debts. Appellee then persuaded appellant to remain silent and not force Roach into bankruptcy until the royalty assignment was no longer subject to being set aside as a preferential transfer. After 90 days had expired and the royalty assignment was safe, appellee then sued appellant. So far as I am concerned the bank does not have clean hands and should be estopped from collecting the note executed by Ward and assumed by Roach. The royalty assignment will no doubt be applied to obligations other than the Ward note.