**NEW EQUITY SECURITY HOLDERS COMMITTEE FOR GOLDEN GULF, LTD., Plaintiff,**

v.

**Jerry PHILLIPS, Robert Johnson, Kumarapillar Narendran, Frank Hersey, Robert Hogue, and Jim Laubhan, Defendants.**

**Civ. No. LR-C-87-165.**

United States District Court, E.D. Arkansas, W.D.

Feb. 21, 1989.

Ronald L. Boyer, Rogers, Ark., for plaintiff.

Stephen Bilheimer, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This action was originally filed by the Plaintiff in the United States Bankruptcy Court for the Eastern District of Arkansas, Western Division, as six separate adversary proceedings in the bankruptcy of Golden Gulf, Ltd. Based upon the bankruptcy court's recommendation of January 30, 1987, the United States District Court withdrew reference of these actions and consolidated them for trial, 73 B.R. 685. Thereafter, the parties agreed to a Stipulation of Facts and that the case be presented to the court for decision upon briefs. Briefs from both parties have been received and reviewed, and the court's decision follows.

### FACTS

On July 17, 1981, a Certificate of Limited Partnership was filed in Harrison County, Mississippi for a limited partnership known as Golden Gulf, Ltd. (hereinafter "GGL" or "Partnership"). GGL was organized for the purpose of acquiring the Ramada Inn Hotel ("Property") in Biloxi, Mississippi, operating that hotel, and providing tax benefits for its limited partners. Diversified Financial Services Corporation of America ("DFS") organized, promoted and sold the interests in GGL. David R. Kane was the principal stockholder of DFS, and also the principal beneficial owner of Realty Properties Company ("Realty"), the general partner of GGL. The vice president of Realty was William G. Campbell, who was responsible for the structuring and execution of the GGL offering, real estate acquisition, and tax planning. In short, Mr. Kane and Mr. Campbell were the principal promoters of GGL.

Through its underwriter/broker-dealer, DFS, the Partnership distributed an Offering Memorandum dated September 8, 1981, to potential limited partners. GGL offered for sale thirty-one (31) limited partnership units at $75,000.00 per financed unit and $56,000.00 per cash unit, with total equity proceeds of approximately $2,325,000.00. Each financed unit was purchased with a $9,000.00 cash payment and promissory note payable to GGL for the balance. The issue of interests resulted in $506,000.00 cash and $1,890,750.00 in investor notes. To raise capital, GGL took out loans from Worthen Bank & Trust Co. ("Bank") of Little Rock, Arkansas, and pledged all but one of the notes and proceeds thereof as collateral.

In 1981 and 1982, the Defendants, Jerry Phillips, Robert Johnson, Kumarapillar Narendran, Frank Hersey, Robert Hogue, and Jim Laubhan, each purchased GGL limited partnership interests with the combination cash/note financing.

On November 18, 1982, GGL was placed into debtor-in-possession bankruptcy. The hotel was operated by GGL until August 1, 1983, when it was sold. Liquidation of GGL assets resulted in net proceeds sufficient to pay all priority claims, administrative expenses, secured debts, and unsecured debts, with monies left over to make

a distribution to GGL limited partners. During the administration of bankruptcy, the Defendants refused to make payments on their notes, claiming defenses to such payment.

The confirmed Reorganization Plan called for distribution of the leftover monies only to limited partners in "Class 8"—those who had completely paid for their interests or who were current on their investor notes ten days prior to the confirmation hearing date. The remaining limited partners ("Class 9") were excluded from distribution. The Plan also provided for the organization of the New Equity Security Holders Committee (the Plaintiff herein), which was controlled by Class 8 members and vested with the authority to begin collection proceedings on the notes which remained unpaid, i.e., notes of Class 9 members. The result of those proceedings is the action before this court today.

The Plaintiff seeks the unpaid balance on the Defendants' notes plus accrued interest, and the Defendants assert affirmative defenses of securities fraud, fair trade fraud, common law fraud, constructive fraud, illegality, release, equitable estoppel, and waiver.

## DISCUSSION

### I. RES JUDICATA

The threshold issue in this case is whether the Defendants are barred from raising any of their affirmative defenses to the Plaintiff's asserted right of recovery.

In its trial brief, the Plaintiff maintains that the Defendants' affirmative defenses are barred under the doctrine of res judicata. According to the Plaintiff's theory, the Defendants' defenses are essentially claims for rescission and reclamation which were subordinated pursuant to 11 U.S.C. § 510(b), confirmed as subordinated in the Reorganization Plan by the bankruptcy court, and thereby extinguished and barred from being relitigated before this court. The court disagrees.

 Under the doctrine of res judicata, a final judgment on the merits by a court of competent jurisdiction bars further claims by the parties or their privies on the same cause of action. *U.S. v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). Application of this doctrine may have two different effects: a) foreclosure of relitigating matters that have once been litigated and decided; and b) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit. 18 Wright, Miller, & Cooper, *Federal Practice and Procedure* § 4402 (1981). The burden of proving the elements of res judicata falls on its proponent. *F.T.C. v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282 (D.C.Minn.1985).

In this case, the Committee asserts that the Defendants' claims of securities fraud and misrepresentation were "litigated" and finally judged by the bankruptcy court in its confirmation of the Reorganization Plan. The Committee seems to argue that these claims were raised in the bankruptcy proceedings and decided on their merits via confirmation along with the rest of the creditors' claims, despite the fact that the bankruptcy court makes no specific findings as to the merits of the Defendants' claims.

 Claims based on fraud are not provable debts dischargeable in bankruptcy. *Crimmins v. Crimmins,* 406 F.Supp. 282, 286 (S.D.N.Y.1975); *U.S. v. Sullivan,* 19 F.Supp. 695, 698 (W.D.N.Y.1937), *aff'd,* 95 F.2d 1021 (2d Cir.1938); 11 U.S.C. § 63. Therefore, even though the Defendants' claims were effectively subordinated when the bankruptcy court confirmed the Plan, they were not automatically extinguished. To have been discharged, the court must have specifically addressed and judged the claims on their merits. This the bankruptcy court did not do. To the contrary, that court expressly left that determination for future proceedings before this court, stating:

> [T]he bankruptcy court could not prevent the defendants from raising fraud, misrepresentation and violation of the securities laws of the United States as affirmative defenses standing in the way of the trustee's asserted right of recovery.

Report and Recommendation of the Bankruptcy Court, January 30, 1987, at p. 4.

■ Thus, there has been no final judgment on the merits of the Defendants' claims. Accordingly, these claims are not barred under the doctrine of res judicata from being used as affirmative defenses in the proceedings before this court.

## II. AFFIRMATIVE DEFENSES

### A. SECURITIES FRAUD UNDER § 10(b) AND RULE 10b–5

Pursuant to Section 10(b) of the Securities Exchange Act of 1934, the Securities and Exchange Commission promulgated Rule 10b–5 to protect investors from manipulative and deceptive practices in securities transactions.[1] A philosophy of full disclosure was to be substituted for the philosophy of caveat emptor, and thereby achieve a high standard of business ethics in the securities industry. *See Cant v. A.G. Becker & Co., Inc.,* 374 F.Supp. 36 (N.D.Ill.1974).

To have an actionable claim under Rule 10b–5, the party alleging fraud must show:

1) That the party who allegedly committed the fraud

 a) employed a device, scheme or artifice to defraud;

 b) made misrepresentations or omissions of material fact; or

 c) engaged in acts, practices, or courses of business that operate as a fraud or deceit;

2) Causation;

3) Damages;

4) That the fraudulent activity occurred in connection with the purchase or sale of a security; and

5) Scienter.

*Harris v. Union Elec. Co.,* 787 F.2d 355 (8th Cir.1986), *cert. denied,* 479 U.S. 823,

107 S.Ct. 94, 93 L.Ed.2d 45. *See also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Defendants use Rule 10b–5 as a defense to Plaintiff's claim by asserting that the fraud rendered the investment transaction, including the promissory notes, invalid. Thus, Plaintiff's action to collect on the notes would be moot. The Defendants base their 10b–5 claim on certain alleged misrepresentations and omissions in the GGL Offering Memorandum. Each of these omissions and misrepresentations are discussed below in the context of 10b–5 requirements.

#### 1. Materiality

Under the first element of Rule 10b–5, omissions and misrepresentations must be of material fact. The standard for materiality in 10b–5 cases was stated recently by the United States Supreme Court in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The Court, drawing its standard from *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), held that an omitted fact is material if there is a substantial likelihood that its disclosure would have been considered significant by a reasonable investor. *Basic Inc.,* 108 S.Ct. at 983. Put another way, the disclosure of an omitted material fact is one that is viewed by a reasonable investor as having significantly altered the 'total mix' of information made available. *TSC,* 426 U.S. at 449, 96 S.Ct. at 2132.

With this standard in mind, the facts alleged to have been misrepresented or omitted are discussed below.

#### A) *William Campbell's Education and Conviction*

■ The Defendants allege that the Offering Memorandum contained a misrepre-

---

1. Rule 10b–5 (17 C.F.R. § 240.10b–5) reads:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

 (a) To employ any device, scheme, or artifice to defraud,

 (b) To make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

sentation of material fact by stating that Mr. Campbell had a college degree when in fact he did not. The court disagrees.

Although the Offering Memorandum expressly stated that Campbell held a business administration degree from the University of Arkansas when in fact he was roughly two credits short of the degree, this fact in and of itself would not be a significant factor to a reasonable investor when weighing the soundness of the entire investment. In the total mix of information available, the difference of two credits in Mr. Campbell's education could not reasonably be seen as significant. Thus, although this fact was misrepresented, it was not material.

■ The same cannot be said for Mr. Campbell's conviction, however. The materiality of prior criminal conduct by a director, executive officer, promoter, or other control person in making securities offerings is reflected in various cases and securities regulations. *See, e.g., S.E.C. v. Scott,* 565 F.Supp. 1513, 1527 (S.D.N.Y. 1983) (prior criminal conviction found to be material information withheld from investors); *S.E.C. v. Holschuh,* 694 F.2d 130, 142 (7th Cir.1982) (same); 17 C.F.R. § 229.401(f) (disclosure of certain convictions in registered securities statements); 17 C.F.R. § 230.261(a) (nondisclosure of conviction or indictment results in suspension of exemption from securities registration). Among the factors to be considered when determining whether prior criminal conduct is material are the nature and extent of the conduct, and the length of time that has elapsed since the conduct.

In this case, Mr. Campbell pled guilty to a tax related offense on December 17, 1976. He was sentenced to prison and ordered to pay a fine. Within five years, he was listed in the Offering Memorandum as a director and vice president of Realty (GGL's general partner) and its affiliates, and was responsible for the structuring and execution of the GGL securities offering, real estate acquisition, and tax planning. No mention of the conviction was made in the Offering Memorandum or otherwise.

Because the criminal activity was so directly related to the responsibilities that Mr. Campbell was given in GGL, and because of the recency of his conviction, a reasonable investor would certainly have considered the disclosure of that fact as significant. Therefore, the court finds that its nondisclosure was an omission of material fact.

### B) Financing

■ Facts about financing in securities offerings have often been found material because of the importance of careful financing to the success of a project. *See, e.g., Eastwood v. National Bank of Commerce, Altus, Okl.,* 673 F.Supp. 1068, 1072 (W.D.Ok.1987) (misrepresentation of loan restructuring and payment); *Koehler v. Pulvers,* 614 F.Supp. 829, 842 (S.D.Cal. 1985) (misrepresentation of use of investor funds, general partner's "true track record", inadequate liquidity, and precarious financial condition); *S.E.C. v. United Financial Group, Inc.,* 474 F.2d 354, 358 (9th Cir.1973) (omissions of intra-affiliate transactions, inability of affiliates to pay off loans, foreclosure of various assets, and insolvency of affiliates).

Several facts relating to the financing of the project are alleged to have been material and misrepresented or omitted in the Offering Memorandum. The court finds that the following facts have been proven by the Defendants:

1) The Offering Memorandum stated that financing for GGL included a non-recourse wraparound note from GGL to Summitt Financial Corporation for $2,754,000.00, when in fact the note was for $14,833,440.00.

2) This wraparound note accrued interest at a greater amount than principal and cash payments on that note, i.e. the financing of the Property resulted in negative amortization. The Offering Memorandum did not disclose nor was amended to disclose this fact.

3) On November 22, 1981, Summa T Corporation, International (parent corporation to Summitt Financial Corp.), Mr. Kane, and Mr. Campbell were in

default of their underlying purchase obligations on the Property, which lead to foreclosure on the Property in March 1982. The Offering Memorandum did not disclose nor was it amended to disclose these facts.

4) During and prior to 1981, GGL's principal promoters, Mr. Kane and Mr. Campbell, were in a precarious financial condition, as evidenced by numerous past-due loans, difficulties with the IRS and the S.E.C., and various lawsuits against them or their affiliates. The Offering Memorandum did not disclose nor was it amended to disclose this condition.

5) As early as October 30, 1981, Worthen Bank, as lender to the promoters and affiliates of GGL, was to be given proceeds from the sale of GGL partnership interests in order to bring current the past-due loans of the promoters and affiliates. The Offering Memorandum did not disclose nor was it amended to disclose this fact.

6) GGL, its promoters, and affiliates were so interrelated and interdependent that financial destruction of one could cause the financial destruction of another. The Offering Memorandum did not disclose nor was it amended to disclose this fact.

7) The Offering Memorandum indicated that the investor notes for GGL would be pledged, assigned, or sold in connection with loans to GGL, and the proceeds of those loans would be used for the sole benefit of GGL. In fact, those proceeds were used for the benefit of entities other than GGL.

8) The Offering Memorandum indicated that the general partner of GGL (Realty) would invest $10,000.00 in GGL. In fact, Realty never contributed $10,000.00 to GGL.

Each of these facts, independent of the others, provides significant information which a reasonable investor would use to gauge the financial feasibility and stability of the project. There is a substantial likelihood, therefore, that the disclosure of each fact would have been considered significant to a reasonable investor. The court finds each of these facts material.

There is an additional misrepresentation alleged, however, that has not been proven. The Defendants allege that a misrepresentation was made when the Offering Memorandum indicated that the general partner (Realty) would loan funds to GGL as needed, when in fact such loans were never made nor capable of being made.

No misrepresentation was made here. The Offering Memorandum actually stated that the general partner would commit to loan funds to GGL through 1985, up to an aggregate of $75,000.00 to meet normal operating expenses and debt service on the wraparound note if GGL cash flow was not sufficient for such purposes. Further, the Memorandum specifically stated that there was no assurance that the loans would actually be available or sufficient to meet GGL's actual cash deficits. Therefore, the failure of Realty to make loans to GGL did not create an inconsistency or misrepresentation in the Offering Memorandum.

### C) Litigation

■ Facts concerning prior and/or pending litigation against promoters and affiliates have been held to be material because of the direct impact that litigation has on the financial resources and integrity of a project. *See, e.g., DeMarco v. Security Planning Service, Inc.,* 462 F.Supp. 1066, 1071 (D.Ariz.1978). In this case, the following facts are uncontroverted:

Mr. Kane, Mr. Campbell and the Kane affiliated companies, including GGL, its general partner and/or affiliated companies were, prior to Defendants' purchase of GGL interests, engaged in litigation and other legal matters, many times as a defendant based upon allegations of securities fraud, including but not by way of limitation, *Metropolitan National Bank v. Summa T Corp. International, David Kane and Bill Campbell,* CV–S–82–0162(N), United States District Court, Southern District of Mississippi, Southern Division; *IEI Realty v. Joe Bacus, et al. v. David Kane, et al.,* No. 81–2271, Pulaski County Chancery Court, Third

Division; *Bacus, et al. v. IEI Realty, Inc.*, No. 81–2381, Pulaski County Chancery Court, Third Division; *Arthur L. Bellot, Jr., M.D., et al. v. David Kane, et al.*, CV–81–909–RD, Shelby County, Tennessee Chancery Court; *USA v. Starburst Corp., Diversified Financial Services*, IRS Lien No. 27–626; *In Re: Diversified Financial Services Corp. of America, et al.*, No. FW–1742, TCB: JVF, before the Securities and Exchange Commission.

The Offering Memorandum, on the other hand, indicated the extent of the litigation to be "[t]he Selling Agent is a defendant in lawsuits brought by two of its customers ...". No amendments to the Memorandum were made to disclose additional litigation. In addition, the Offering Memorandum stated that another case, *Graham v. Kane, et al.*, was on appeal when in fact the judgment against those defendants was final and execution had already begun on the assets of those defendants.

It is clear that the true extent of this litigation was material. A reasonable investor would have thought it significant because of the substantial expense of time and financial resources involved. This expense affected GGL directly and indirectly, through actions against its underwriter/broker-dealer, promoters, and affiliates. The litigation also served as an indication of the character and integrity of the Partnership, its members, and affiliates.

### D) S.E.C. Investigation

█ Just as litigation can determine the fate of a project and thereby be material, so, too, can an S.E.C. investigation be material. *Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1048 (2d Cir.1985). The Offering Memorandum failed to disclose the fact that the promoters and affiliates of GGL were under investigation by the S.E.C. in 1981. This fact could reflect the integrity and character of the promoters and affiliates of GGL, and influence the success or failure of the project. Any reasonable investor would consider the disclosure of this fact significant. Thus, it is material.

### E) Tennessee's Refusal of Sale

The court also finds that the project's status with the State of Tennessee was a material fact and should have been disclosed to investors. On September 29, 1981, the Securities Department of Tennessee refused to allow the sale of GGL partnership interests in that State, based on a qualitative review of the GGL offering. Even though this fact was omitted from the Offering Memorandum because the refusal occurred after the date of publication, it was not disclosed later to investors by amendment or otherwise. The fact that Tennessee refused the sale would be significant to a reasonable investor.

### F) Opinion Letter of Counsel

In addition to the above facts concerning the project's status, the Defendants allege that the absence of an opinion letter from counsel was a material fact. The Offering Memorandum indicated that such a letter regarding the status of GGL would be obtained, when in fact it was not. It is unlikely that a reasonable investor would consider the disclosure of this fact, in the total mix of available information, significant. Therefore, this fact was not material.

### 2. Causation

Causation is the second element which must be established in an actionable 10b–5 claim, and it is analyzed in terms of reliance and materiality. *See Harris v. Union Elec. Co.*, 787 F.2d 355 (8th Cir.1986), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45. Reliance is presumed with respect to omissions of material fact. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh. denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 *reh. denied*, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345; *In re McDonnell Douglas Corp. Securities Litigation*, 587 F.Supp. 625 (E.D.Mo.1983). Thus, the Defendants need only prove reliance with respect to the misrepresentations of material fact.

By affidavit, each of the Defendants stated that he was presented with an Offering Memorandum and read it prior to his purchase of a partnership interest. Each

Defendant formed an understanding of the Memorandum's contents and had no knowledge of the misrepresentations or omissions. No disclosure of the aforementioned material facts was made to any of the Defendants prior to his purchase. Each Defendant considered each of the material facts as necessary to make an informed decision of investment in GGL. Specifically, the misrepresentations that the Defendants relied upon were:

a) That the non-recourse wraparound note was in the amount of $2,754,000.00;

b) That proceeds from the notes pledged in connection with loans to GGL would be used for the sole benefit of GGL;

c) That the general partner would make a $10,000.00 capital contribution to GGL; and

d) That material litigation affecting GGL consisted only of claims by two of the Selling Agent's customers.

Reliance on each of these misrepresentations has been proven without opposition. Accordingly, the court finds that causation has been shown for the Defendants' 10b–5 claim.

### 3. Damages

The damages suffered by the Defendants are apparent. Each Defendant relied upon the contents of the Offering Memorandum, and in that reliance decided to invest in GGL at considerable cost. Had there been a full disclosure of the material facts, not one of them would have invested. Put simply, each Defendant was damaged at least to the extent of his investment.

### 4. Sale or Purchase of Security

The misrepresentations and omissions of material fact proven by the Defendants were defects of the Offering Memorandum, which was used as the primary tool for communicating the sales offering of GGL security interests. It is clear that this element of the 10b–5 claim has been met.

### 5. Scienter

The final element of Defendants' 10b–5 defense is scienter, i.e., the intent to deceive, manipulate, or defraud. *Ernst,* 425 U.S. at 193, 96 S.Ct. at 1380–81. Scienter may be established by showing severe recklessness, conduct that presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. *Broad v. Rockwell International Corp.,* 642 F.2d 929, 961 (5th Cir. 1981) (en banc), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380.

Each of the aforementioned misrepresentations and omissions of material facts clearly presented a danger of misleading, and did mislead, GGL investors. Plaintiff does not dispute the fact that David Kane, William Campbell, and others involved in the promotion and sales of GGL interests had knowledge of the material facts and nondisclosure or partial disclosure of those facts. Further, there is no doubt that the Partnership was aware of the danger of misleading investors yet chose to do so to induce them to buy GGL interests.

The Defendants have proven scienter, as well as the rest of the requisite elements for 10b–5 fraud, and therefore the court sustains this affirmative defense. Furthermore, the success of this defense warrants dismissal of Plaintiff's action. The court, however, will address the remainder of the affirmative defenses as independent grounds for dismissal.

### B. SECURITIES FRAUD UNDER A.C.A. § 23–42–106

The second of the Defendants' affirmative defenses is securities fraud under Arkansas Code Annotated § 23–42–106 (formerly § 67–1256, repl. 1980),[2] which is very

---

2. Ark.Code Ann. § 23–42–106, in pertinent part, states:

(a)(1) Any person who commits the following acts is liable to the person buying the security from him ...:

\* \* \* \* \* \*

(B) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not

similar to Rule 10b–5. The major difference between the two claims is that § 23–42–106 requires the Plaintiff to prove absence of scienter. That is, Plaintiff must show that the Partnership did not know, and in the exercise of reasonable care could not have known, of the existence of the misrepresentations or omissions of material fact. *Quick v. Woody,* 295 Ark. 168, 747 S.W.2d 108 (1988).

As discussed, the court finds that the Defendants have satisfied all of the elements for their 10b–5 defense. Similarly, the court finds that they have proven all of the elements for their § 23–42–106 defense, and Plaintiff has failed to rebut the proof of scienter. Thus, Plaintiff is barred by § 23–42–106(g) from suing on the promissory notes.

## C. COMMON LAW FRAUD AND DECEIT

As a third affirmative defense, Defendants allege that the Partnership's conduct in procuring the promissory notes constituted fraud and deceit under common law. The elements of that tort are as follows:

1) A false representation (ordinarily of fact) made by the defendant;

2) Knowledge or belief on the defendant's part that the representation is false or that he has not a sufficient basis of information to make it;

3) An intention to induce the plaintiff to act or refrain from action in reliance upon the misrepresentation;

4) Justifiable reliance on the representation by the plaintiff, in taking action or refraining from it;

5) Damage to the plaintiff, resulting from such reliance.

*Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985).

Again, the findings of fraud under both 10b–5 and A.C.A. § 23–42–106 are equally applicable here, and support a finding of common law fraud and deceit.

## D. FRAUDULENT CONCEALMENT

The fourth affirmative defense raised by the Defendants is fraudulent concealment, i.e., concealment of material facts that one is, under the circumstances, bound to disclose. The duty to speak ordinarily arises from a confidential relationship where one party knows another is relying on misinformation to his detriment. *Ward v. Worthen Bank & Trust Co.,* 284 Ark. 355, 681 S.W. 2d 365 (1984).

The relationship between GGL and the Defendants was a confidential, fiduciary one. The Partnership was the primary source of information for investors with respect to the offering, and had a duty to disclose all material information about the offering to those investors. The Partnership did not disclose all such information to the Defendants, which was a breach of its fiduciary duty. Furthermore, it had knowledge of the concealment, and of the Defendants' reliance (to their detriment) on the information as given. Thus, GGL's conduct amounted to fraudulent concealment and thereby bars the Plaintiff's cause of action.

## E. CONSTRUCTIVE FRAUD

Constructive fraud is based upon a breach of legal or equitable duty which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose or intent of the fraud feasor. *See Miskimins v. The City National Bank,* 248 Ark. 1194, 1204, 456 S.W.2d 673, 678–79 (1970). Such fraud is asserted by the Defendants as their fifth affirmative defense.

Because the Defendants have already proven actual fraud in various legally recognizable forms, the defense of construc-

---

sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission;

\* \* \* \* \* \*

(g) No person who has made or engaged in the performance of any contract in violation of any provision of this chapter or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.

tive fraud becomes unnecessary. However, if actual fraud were not proven, constructive fraud surely would be. Misrepresentations and omissions of material facts in security offerings clearly have the tendency to deceive investors, and as previously discussed, the Partnership breached its duty to disclose the material facts independent of intent.

### F. VIOLATION OF ARKANSAS "LITTLE FTC ACTS"

Yet another of the Defendants' affirmative defenses is found by the court as a bar to Plaintiff's action. This defense is based on A.C.A. § 4–88–106 and 4–88–107, which prohibit deceptive trade practices in Arkansas. These and similar laws, called "Little FTC Acts", have been applied to the securities context. *Kowalski v. Northern Trust Co.*, No. 84 C 1087 (N.D.Ill., Sept. 28, 1984).

Section 4–88–106, in pertinent part, provides:

(a) Deceptive trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:

(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval or certification of goods or services, or as to whether goods are original or new, or of a particular standard, quality, grade, style, or model;

\* \* \* \* \* \*

(3) Advertising goods or services with intent not to sell them as advertised;
. . .

Section 4–88–107, in pertinent part, provides:

The act, use or employment by any person of any deception, fraud or false pretense, or the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression or omission, in connection with the sale or advertisement of any goods or services . . .

In the instant case, the Defendants have shown the requisite fraud by misrepresen-tation, omission and concealment in connection with the advertising and sale of GGL securities. Therefore, this affirmative defense is sustained in addition to the others, and acts as an independent bar to Plaintiff's action.

### G. WAIVER AND EQUITABLE ESTOPPEL

The final and collective affirmative defense asserted by the Defendants is waiver and equitable estoppel. Although these terms are often used interchangeably, they embody distinct concepts. By general definition, waiver is the voluntary and intentional relinquishment of a known right, claim, or privilege. The question is whether the waiving party had the requisite intent. Estoppel, in contrast, focuses on the actions of the party alleging estoppel. It arises when a party's conduct misleads another into believing that a right will not be enforced and causes the other to act to his detriment in reliance upon this belief.

For this collective defense the Defendants allege that in May 1984, the GGL estate and Worthen Bank had negotiated to "discount" the investor notes and reduce the Estate's obligations to the Bank. In March 1985, Plaintiff's representative, Gary Riley, tried to thwart these settlement efforts, thereby increasing the amount of money to be collected on the investor notes (including those of the Defendants) and eliminating any other benefit to the Defendants that would otherwise result from the settlement. In other words, it is alleged that these actions by Plaintiff altered or were attempts to alter the rights of GGL in relation to the Bank and the investor notes, all to Defendants' detriment. Therefore, Plaintiff waived any rights that GGL may have had to enforce the notes against the Defendants and released Defendants. Further, the result of Defendants losing the benefits of settlement equitably estops Plaintiff from collecting on the notes.

The court does not find that Plaintiff's conduct amounted to a waiver. Mr. Riley attempted to ensure collection by the Bank on the full value of the notes from the

Estate so that Plaintiff, in turn, could enforce fully the notes against the investors. The Defendants have not shown any intention on the part of Plaintiff to relinquish this right to collect on the notes. Nor does Plaintiff's conduct warrant a finding of equitable estoppel. The Defendants could not reasonably have interpreted Mr. Riley's conduct as a relinquishment of the right to collect on the notes, and thereby relied on it. to their detriment.

The failure of this affirmative defense does not diminish the success of the rest, however. The Defendants have shown more than sufficient grounds for dismissing Plaintiff's action.

Therefore, IT IS ORDERED:

THAT PLAINTIFF'S CAUSE OF ACTION IS HEREBY DISMISSED ON ITS MERITS AND WITH PREJUDICE; AND DEFENDANTS ARE AWARDED ALL COSTS AND DISBURSEMENTS HEREIN.