Gary LAMBERT and Nedra Lambert *v.* FIRSTAR BANK, N.A.

CA 02-1271                                             127 S.W.3d 523

Court of Appeals of Arkansas
Division I
Opinion delivered October 22, 2003

*R. Victor Harper*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *H. Keith Morrison*, for appellee.

KAREN R. BAKER, Judge. This is an appeal involving application of the Arkansas Statutory Foreclosure Act, Ark. Code Ann. §§ 18-50-101 to 116 (Supp. 2001) (Act), to appellants Gary Lambert's and Nedra Lambert's attempt to reinstate their defaulted mortgage. The trial court granted appellee Firstar Bank's motion for summary judgment and denied appellants' motion for summary judgment. We affirm.

The parties stipulated to the facts of this case. On or about September 9, 1996, appellants executed a promissory note and mortgage, later assigned to appellee, covering property in Lincoln County, Arkansas. The note provided for a monthly payment of principal, interest, taxes, and insurance in the amount of $859.99. Appellants became delinquent in their monthly mortgage payments, and appellee sent a letter on August 4, 1999, informing appellants that they owed $2,579.97 for past-due payments and $61.28 for late charges for a total amount owing of $2,641.25. At the time of the August 4, 1999, letter, appellants were three months behind on their monthly mortgage payments. Appellee retained counsel to institute foreclosure proceedings on the mortgaged property.

As of December 1, 1999, appellants were delinquent on their mortgage for six monthly payments and the December payment was due; the total mortgage payments due and late fees totaled $6,235.27. On December 15, 1999, appellee filed a Mortgagee's Notice of Default and Intention to Sell. The notice provides in prominent, bold letters "YOU MAY LOSE YOUR PROPERTY IF YOU DO NOT TAKE IMMEDIATE ACTION." There is no evidence to show that the parties communicated at that time regarding a total amount claimed. A sale date for the mortgaged property was set for February 24, 2000. By letter dated January 12, 2000, appellee's counsel sent to appellants via certified mail a copy of the Notice of Default and Intention to Sell. The notice did not contain a demand for specific payment. The letter was returned, marked "unclaimed" on January 22, 2000.

On February 8, 2000, appellants tendered two cashier checks totaling $9,000 to appellee in an attempt to reinstate the mortgage. As of that date, the total of all delinquent mortgage payments, late fees, and the costs and fees accrued in the foreclosure proceeding totaled $9,813.72. There is no evidence indicating that the parties communicated regarding the total amount owing at this time. At the time appellants tendered the cashier's checks, they

were delinquent for eight monthly payments plus fees, costs and expenses associated with the delinquency and foreclosure, and February's payment was due. There is no evidence to show that appellee communicated to appellants the insufficiency of the tendered payment to cover all fees and costs, and there is no evidence to show that appellants communicated with appellee to confirm whether the tendered payment would be sufficient to cover all fees and costs. The tendered amount was sufficient under terms of the mortgage to cover the February payment and past-due payments but insufficient to cover the additional fees, costs, and expenses associated with the foreclosure. The mortgage was not reinstated, and this information was not communicated to appellants until after the sale of the property. The sale of the mortgaged property took place on February 24, 2000, with appellee the successful bidder.

Appellants received a letter dated February 26, 2000, notifying them of the total amount claimed. The letter gave appellants two days to tender the money in full. Appellants' cashier's checks in the amount of $9,000 were returned to them, by certified mail, with a letter dated March 9, 2000. After attempts at delivery, the letter was returned, marked "unclaimed" on March 31, 2000. The cashier's checks were returned to appellants on June 21, 2000, as soon as it was discovered where the checks should be sent. On March 9, 2000, a notice to vacate was sent to the occupants of the property. Appellants were served with a writ of assistance on April 14, 2000, and thereafter vacated the property.

Appellants filed their complaint on September 27, 2000, alleging that appellee failed to comply with the Act in that appellee's notice did not contain the exact amount necessary to cure the default. The complaint sought an injunction preventing appellee from proceeding with the foreclosure and damages. Appellee answered, denying that it had failed to comply with the Act or that appellants had tendered sufficient funds to cure the default and reinstate the mortgage.

Appellee filed its motion for summary judgment, asserting that it was entitled to judgment as a matter of law because appellants had failed to comply with Ark. Code Ann. § 18-50-114(a) (Supp. 2001) by tendering the entire amount of payments, late fees, and attorney's fees and costs and that Ark. Code Ann. § 18-50-116(d)(2) (Supp. 2001) barred appellants' action because suit was not filed until after the sale. Appellants filed their response

to appellee's motion for summary judgment, asserting that appellee arbitrarily imposed attorney's fees and failed to advise appellants that the sum tendered was insufficient to cure the default. Meanwhile, appellants filed their motion and brief for summary judgment, asserting the same grounds as in their response to appellee's motion.

The trial court issued a letter opinion in which it concluded that, before appellee had a duty to reinstate appellants' mortgage, appellants had the duty to make inquiry as to the amount needed to reinstate the mortgage and to pay that full amount. The trial court found that appellants failed to do either. The trial court also concluded that appellants' suit was untimely under Ark. Code Ann. § 18-50-116(d). The trial court then granted appellee's motion for summary judgment and denied appellants' motion. Judgment was entered accordingly on September 20, 2002, and this appeal followed.

Appellants argue two points: (1) that the trial court erred in concluding that appellee had complied with the Act and was not required to notify appellants that the sum tendered was insufficient; and (2) that the trial court erred in concluding that appellants' action was barred as untimely.

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Bond v. Lavaca Sch. Dist.*, 347 Ark. 300, 64 S.W.3d 249 (2001). Normally, in an appeal from a summary judgment, the evidence is viewed most favorably for the party resisting the motion, and any doubts and inferences are resolved against the moving party, but when the parties agree on the facts, we need only determine whether the appellee was entitled to judgment as a matter of law. *See Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). When both sides move for summary judgment and thus, in essence, agree that there are no material facts remaining, summary judgment is an entirely appropriate means for resolution of the case. *Id.* The question in the case at bar is one of law — whether appellee was entitled to judgment as a matter of law. *Id.*

For their first point, appellants argue that the trial court erred in finding that appellee complied with the Act and was not required to notify appellants that the sum tendered was insufficient

to cure the default. Appellants note that the Act is subject to a strict construction. *See Henson v. Fleet Mortgage Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995).

Arkansas Code Annotated section 18-50-114(a) (Supp. 2001) provides, in part:

> (a) Whenever all or a portion of the principal sum of any obligation secured by a mortgage or deed of trust ... has become due or has been declared due by reason of a breach or default ... including a default in the payment of interest or of any installment of principal ... then the *mortgagor ... may pay*, at any time subsequent to the filing for record of a notice of default and intention to sell and prior to the sale, to the mortgagee ... *the entire amount then due under the terms of such mortgage or deed of trust, including costs and expenses actually incurred in enforcing the terms of such obligation and mortgage or deed of trust, and trustee's and attorney's fees* other than that portion of the principal which would not then be due had no default occurred, *and thereby cure the default theretofore existing....*

(Emphasis added.) Appellants argue that appellee should have been required to send them notice of the amount needed to cure the default because appellee had appellants' $9,000 for some two weeks without notifying appellants that the sum was insufficient. Appellants also argue that appellee arbitrarily inflated the amount of the attorney's fees so as to go over the $9,000 tendered by appellants. However, appellant did not allege, nor offer any proof, that they relied on appellee's silence as indicating that the tendered funds were sufficient to cover the default or that the fees were not actually incurred, as provided in section 18-50-114(a).

Instead, appellants insist that appellee had a duty to inform them that the amount tendered was insufficient and to provide them with the correct amount to cure the default. The general rule is to the contrary, and ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information. *See Ward v. Worthen Bank & Trust Co.*, 284 Ark. 355, 681 S.W.2d 365 (1984) (*quoting Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983)).

Appellants' argument is in the nature of a detrimental-reliance argument. However, it was not pled or argued below. This is not to say that complying with the Act insulates a financial institution from liability. Arkansas Code Annotated section 18-50-116(d)(2) does not prevent a party from timely asserting any claims or defenses it may have concerning the foreclosure. In *Berkley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983), the court recognized that there are times when the law imposes a duty to speak rather than remain silent when the failure to speak is the equivalent of fraudulent concealment but that this duty arises only when special circumstances, such as confidential relationships are shown. In *Camp v. First Federal Savings & Loan*, 12 Ark. App. 150, 671 S.W.2d 213 (1984), we held that *Berkley Pump* had not restricted those circumstances to confidential relationships but extended it to other special circumstances surrounding the transaction which give rise to a relationship that requires disclosure. In *Camp*, the appellant did not argue that First Federal had actively made false representations to her but insisted that First Federal had owed her a duty to disclose that the property she was purchasing was located in a flood area. First Federal argued that it had no confidential relationship with the appellant because it had merely loaned construction money to the builder. We reversed the directed verdict entered on behalf of the bank and held that a jury should have had the opportunity to decide whether First Federal owed appellant a duty to speak. We noted that the circumstances under which a duty to speak arises are not limited to situations involving confidential relationships; whether special circumstances exist that create such a duty is a question of greater importance. *Id.*

Appellants would have this court rewrite Ark. Code Ann. § 18-50-104 to impose a requirement that the mortgage holder inform the debtor of the amount needed to cure the default. However, as the trial court noted, Ark. Code Ann. § 18-50-104 was amended by Act 983 of 1999 to delete the very requirement that appellants seek to require, that is that the mortgage holder state the amount due in the notice of default. It is not the function of this court to legislate; to do so would be a clear violation of this court's authority. *Hatcher v. Hatcher*, 265 Ark. 681, 580 S.W.2d 475 (1979).

■ Here, it is undisputed that appellants did not tender an amount sufficient to pay all of the payments, late fees, and costs and expenses necessary to cure their default. The plain language of section 18-50-114(a) provides that the mortgagor must pay the *entire* amount of the past-due payments, late fees, and costs and expenses, including attorney's fees before curing the default. Thus, appellee was not *required* by the plain language of section 18-50-114(a) to reinstate appellants' mortgage. Further, the default notice sent to appellants advised them that they could lose their property if they did not take further action. This placed the burden on appellants to make inquiry as to what steps were needed to cure the default. The parties stipulated that there was no evidence that this occurred. Therefore, the trial court did not err in finding that appellee complied with the Act.

■ For their second point, appellants argue that the trial court erred in ruling that appellants' action was barred by their failure to file it prior to the foreclosure sale. Section 18-50-116(d) provides:

(d) Nothing in this chapter shall be construed to:

(1) Create an implied right of redemption in favor of any person; or

(2)(A) Impair the right of any person or entity to assert his legal and equitable rights in a court of competent jurisdiction.

(B) Provided, however, that any such claim or defense shall be asserted prior to the sale or be forever barred and terminated.

Section 18-50-116(d)(2)(B) was added by Act 983 of 1999. Appellants concede that this provision would bar actions filed after the foreclosure sale occurs but argue that it was appellee who delayed the action by waiting some two weeks before telling appellants that their tender was insufficient to cure the default. Appellants do not cite any authority in support of their argument that appellees' delay created an exception to the statutory bar, nor do they assert another claim or defense for our consideration. This court does not consider assertions of error that are unsupported by convincing legal authority or argument, unless it is apparent without further research that the argument is well taken. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998).

 

Accordingly, under the stipulated facts of this case, the trial court did not err in granting summary judgement in favor of appellee.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.