**In the Matter of Billy J. ROSE and Patsy C. Rose, Debtors.**

**FIRST NATIONAL BANK OF HARRISON, Plaintiff,**

v.

**Billy J. ROSE, Patsy C. Rose, Marion County Enterprises, Inc., and the Bank of Yellville, Arkansas, Defendants.**

**Bankruptcy No. HA 81–38.
Adv. No. 81–558.**

United States Bankruptcy Court,
W. D. Arkansas,
Harrison Division.

Nov. 2, 1981.

J. Scott Covington, Harrison, Ark., for plaintiff.

Donald E. Bishop, Little Rock, Ark., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT GRANTING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO THE "PYATT SCHOOL PROPERTY" AND CONDITIONALLY DENYING RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO THE "HOME PLACE"

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff seeks relief from the automatic stay with respect to two tracts of real property which have been respectively referred to in this action as the "home place" and the "Pyatt school property." Their legal descriptions are contained in the marginal note.[1] With respect to both proper-

---

1. The legal description of the "Pyatt school property" is as follows:

"Beginning at the Northwest corner of the Northeast quarter of Section 1, Township 18 North, Range 18 West of the 5th P.M. in Arkansas and run West 15⅓ feet; thence South 631 feet to the place of beginning; thence South 319 feet to a certain stone; thence South 81½ degrees West 630 feet to an Elm tree; thence North 25 degrees East 660 feet to a cedar tree; thence South 65½ degrees East 410 feet to the place of beginning."

The legal description of the "home place" is as follows:

A part of the Northeast quarter of the Southeast quarter of Section 13, Township 18 North, Range 18 West, and more particularly described as follows: From the Northwest corner of the Northeast quarter of the Southeast quarter, said section, township and range, and with the compass set on 5 degrees 30 minutes East, run thence South 101 feet to the point of beginning, run thence South 914.24 feet along the West line of said forty to a point, run thence North 75 degrees 00 minutes East 364 feet to a point, thence North 39 degrees 30 minutes East 172 feet to a point, thence North 15 degrees 00 minutes West 468 feet to a point, thence North 28

ties, the plaintiff has demonstrated in its pleadings in this action that it has security interests which, on their face, are valid and perfected. It has further demonstrated that, as of the date of filing of the complaint herein, (September 15, 1981), the defendants Rose are indebted to it on account of the notes underlying these security interests in a sum exceeding $88,000.00.

In their answer to the plaintiff's complaint for relief from the automatic stay, the defendants "claim their home property as exempt—(but) do not claim the Pyatt school property as exempt" and state that, "(I)nsofar as the mortgage on the Pyatt school property is concerned, (they) agree to lifting the stay to allow plaintiff to foreclose that mortgage . . . (but) (i)f any deficiency results from the sale of the Pyatt school property, . . . such deficiency should be discharged."

In respect to the proposed foreclosure on the "home property," the defendants Rose have several defenses: (1) that they are entitled to rescind the plaintiff's mortgage as a second mortgage which is violative of the Truth in Lending laws and Regulation Z thereunder; (2) that the mortgage is similarly invalid and unenforceable for lack of consideration; (3) that they "have equity in

their home place which is the subject of the mortgage; and (4) that "Plaintiff has adequate protection."

The defendant Bank of Yellville, in an answer filed September 28, 1981, "prays (that) the Bankruptcy Court grant the relief prayed for (by the plaintiff First National Bank of Harrison) herein." The defendant Marion County Enterprises, Inc., has filed no answer or other responsive pleading.

Trial of the merits, on the issues thus joined by the pleadings, was held on October 8, 1981, in Harrison, Arkansas. The plaintiff there appeared by J. Scott Covington, Esquire, its counsel, and the defendants appeared personally and by Donald E. Bishop, Esquire, their counsel. There were no other appearances. The evidence there adduced demonstrated the following facts.

The mortgages of the First National Bank in Harrison are not the only mortgages on these two properties. The defendants Rose have explicitly admitted the plaintiff's allegation that "The Bank of Yellville . . . has mortgages on said property (and) . . . the separate defendants, Billy J. Rose and Patsy C. Rose are indebted on said mort-

degrees 00 minutes West 232 feet to a point, thence North 82 degrees 30 minutes West 233 feet to the place of beginning. That part of the Northeast quarter of the Northeast quarter and that part of the Southeast quarter of the Northeast quarter of Section 13, Township 18 North Range 18 West, lying North of the Road, LESS AND EXCEPT the following described two tracts of land: (1) Part of the Southeast quarter of the Northeast quarter Section 13, Township 18 North, Range 18 West, more specifically described as follows: From the Southeast corner of Section 13, said township and range, go North 2 degrees 54 minutes East 3,366.4 feet along the section line to a car axle, the point of beginning of tract being described; then go North 87 degrees 6 minutes West 417 feet to a car axle, then go North 2 degrees 54 minutes East 209 feet to a car axle; then go South 87 degrees 6 minutes East 417 feet to a car axle; then go South 2 degrees 54 minutes West 209 feet to the point of beginning. Also, an easement 50 feet in width where the present road is located leading from said property South through the Southeast quarter of the Northeast quarter and Northeast of

the Southeast quarter of Section 13, Township 18 North, Range 18 West to the County Road (2) Part of the Southeast quarter of the Northeast quarter Section 13, Township 18 North, Range 18 West, more specifically described as follows: From the Southwest corner of the Southeast quarter of the Northeast quarter (also the Northwest corner of the Northeast quarter of the Southeast quarter) said section, township and range ($3/4$ inch rebar with witness trees), go along the West line of the Southeast quarter of the Northeast quarter North 2 degrees 54 minutes East 65 feet to the point of beginning of tract being described; then continue along West line of said Southeast quarter of the Northeast quarter North 2 degrees 54 minutes East 463.54 feet; then go South 64 degrees 55 minutes 11 seconds East 220.13 feet; then go South 14 degrees 12 minutes 36 seconds West 389.57 feet to a one half inch rebar; then go North 87 degrees 6 minutes West 128 feet to the point of beginning. Together with a right to the spring located near said property and right of way for ingress and egress to said property.

gages in the amount of $22,790.79, plus accrued interest."

According to the testimony of the plaintiff's witnesses, the value of the "home place" is $65,000.00 and that of the "Pyatt School property" is $35,000.00 The defendant Billy J. Rose has testified to approximately the same value for the "home place" and to a much higher value for the "Pyatt school property"—some $45,000 to $50,000 plus some $500 per acre for the 45 surrounding timbered acres. An analysis of the testimony rendered in regard to value reveals strengths and weaknesses in the facts, reasoning and familiarity with the property between the plaintiff's and the defendant's witnesses. This is a matter which will later be explored in greater detail.

The evidence also clearly shows that, when the debtors incurred the indebtedness underlying the plaintiff's security interest, on March 3, 1980, not all of the proceeds of the loan then made by plaintiff went to the defendants. Rather, a sizeable portion of the loan—some $16,000 or thereabouts [2] —went to a Jerry Lowry, or to his credit. According to the testimony of the defendant Billy J. Rose, these funds were paid in Lowry's favor because they constituted debts which were otherwise to be paid off against the Pyatt school property, the ownership of which he and Patsy C. Rose were taking over from Lowry. The payments were made to Lowry or in his favor, according to the testimony of the defendant Billy J. Rose, according to the Roses' wishes and directions. There is no suggestion of fraud or duress in respect of this issue.[3]

## CONCLUSIONS OF LAW

■ The Court must, at the outset, reject the defenses which would go to the totality of the complaint for relief from the automatic stay. The defendant's request for rescission because of alleged truth-in-lending violations is met at the threshold by federal appellate court authority to the effect that claims and defenses under the Truth in Lending Act become the property of the bankruptcy estate upon the debtors' filing a petition for relief under Title 11 and, accordingly, cannot thereafter be asserted by the debtors.[4] And further, it is fundamental that if rescission were granted, the debtors would be required, as at least part of their duty to restore their adversaries to the *status quo*, to either repay the plaintiff forthwith or hand over the property to it. Thus, it would unnecessarily defeat and frustrate the other defenses which the defendants assert to the complaint to grant this one.

■ The defense that the security agreements or mortgages lack consideration because of the payments to or in favor of Lowry must also be denied. Generally speaking, a benefit to a third person which has been bargained for by a party to the contract is consideration sufficient to support the enforcement of the contract.[5]

2. According to the evidence in this action, at least the following monies were paid in favor of Mr. Lowry or his enterprises:

$2,891.08 to the Christian Family Center
$2,481.15 to the Christian Family Store
$7,057.70 to cover an indebtedness of Jerry Lowry
$1,087.42 to cover an indebtedness of Jerry Lowry
$5,245.62 to cover an indebtedness of Jerry Lowry

3. The only conflict in the testimony in this regard is that Mr. Rose contends that he was approached by Joel Tabor, a relative of his who worked for the plaintiff bank, and urged to take the loan of March 3, 1980, and to defray the outstanding debts of Mr. Lowry. Mr. Tabor's testimony is to the contrary and to the effect that the idea was Mr. Rose's in its genesis. But there is no evidence which would warrant a finding that Mr. Rose did anything, in accepting the loan in the manner which he did, which he did not desire to do. It was his intention, according to the evidence, to take over the "Pyatt school property" and, as part of that intention, to extinguish the debts of Lowry so that the family center and store there could continue in operation.

4. See, e.g., *Blanton v. General Electric Credit Corporation*, 642 F.2d 1213 (5th Cir. 1981).

5. "Benefit to the promisor or to a third person at his instance . . . is sufficient to constitute a good and valid consideration on which to maintain an action on the promise." 17 Am.Jur.2d *Contracts* section 94, n. 9, p. 437 (1964).

As noted above, the defendants further defend against relief from the stay, as it pertains to the "home place," on the grounds that granting the plaintiff the right to foreclose the debtors' interest in the "Pyatt school property" will grant the plaintiff "adequate protection" within the meaning of § 361 et seq. of the Bankruptcy Code. Thus, to satisfy an indebtedness of approximately $80,000.00, the defendants, according to their own testimony, would offer the "Pyatt school property," which is worth $50,000 plus some $22,500 in value which they attribute to the surrounding, timbered 45 acres. This clearly, without more, would not be the "indubitable equivalent" of the plaintiff's claim based on its interest in the two tracts of property.

What is available to the defendants is the much less ingenious principle which permits a court of bankruptcy to keep the automatic stay in effect as it prohibits foreclosure upon real property on condition that defaults in contract payments be cured. While the fact that a debtor is in Title 11 proceedings cannot warrant any impairment of his obligation on a real property mortgage, it has long been a maxim of bankruptcy law that "the Court has power to stay foreclosure of laws on real property, and that such power is properly exercised where the debtor has an equity in the property ..., the creditor's security is not impaired by the stay, and the stay is conditioned upon appropriate provision for curing defaults and maintaining payments on the secured claim." Adversary Committee's Note, Rule 13–401 of the Rules of Bankruptcy Procedure and cases there cited. That principle is squarely applicable to this action in which, as the foregoing considerations make clear, foreclosure on the "Pyatt school property" (as the defendants consent in their answer) should result in the debtors' having a substantial equity in the "home place."

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff's complaint for relief from the automatic stay with respect to the "Pyatt school property" be, and it is hereby, granted. It is further

ORDERED AND ADJUDGED that the plaintiff's complaint for relief from the automatic stay with respect to the "home place" be, and it is hereby, denied without prejudice on condition that the defendants Rose cure all defaults within 45 days of the date of entry of this judgment or in such additional time as the Court may grant for good cause shown in writing within that 45 days and that the defendants Rose otherwise maintain current payments on the property.