John **SHIRLEY** and Martha
Shirley Plaintiffs

v.

W. Thomas **McCRANEY**, Jr., M.D., and
Capital Orthopaedic Clinic, P.A.
Defendants

No. CIV.A.3:97–CV–124WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 28, 2001.

John Shirley, Pearl, MS, pro se.
Martha Shirley, Pearl, MS, pro se.

James A. Becker, Jr., Susan Latham Steffey, Watkins & Eager, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is defendants' motion for summary judgment filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.[1] The defendants are W. Thomas McCraney, Jr., M.D., and Capital Orthopaedic Clinic, P.A. The plaintiffs here are John Shirley and Martha Shirley, husband and wife. Plaintiffs oppose defendants' motion for summary judgment. Nevertheless, for the reasons set out below, this court is persuaded to grant defendants' motion.

### I. BACKGROUND

The plaintiffs filed this medical malpractice action in state court on November 12, 1996, charging the defendants with negligent medical treatment of the plaintiff John Shirley. Plaintiff Martha Shirley, wife of John Shirley, has brought a loss of consortium claim.

Then, on February 6, 1997, the plaintiffs filed for bankruptcy protection pursuant to Chapter 13 of the Bankruptcy Code. The parties agreed that this malpractice suit constituted property of the bankruptcy estate and was a scheduled asset, that this court had jurisdiction, and that the outcome of the plaintiffs' medical malpractice suit would have a significant effect on the assets of the plaintiffs if they were to succeed. Influenced by this agreement, this court found that the lawsuit *sub judice* related to a Title 11 claim as contemplated by § 1334,[2] and that the Bankruptcy Court would be able to administer the estate more efficiently and effectively if this case remained under federal jurisdiction. *See Williams v. Chism,* 164 B.R. 735 (N.D.Miss.1994).

The case proceeded to the Bankruptcy Court where only the Bankruptcy Trustee could bring this cause of action. *See Matter of Rose,* 17 B.R. 55 (Bankr. W.D.Ark.1981); and *Dallas Cabana, Inc. v. Hyatt Corporation,* 441 F.2d 865, 867 (5th Cir.1971) (title to the assets of the Hotel vested in the trustee, including all rights of action relating to wrongful injury). The Bankruptcy Trustee, however, took no action regarding this claim and so the bankruptcy case was closed. Pursuant to Title 11 U.S.C. § 554(c), "[u]nless the [bankruptcy] court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." *See*

---

1. Rule 56(b) provides that, "(a) party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

2. Title 28 U.S.C. § 1334 provides in pertinent part that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related

to cases under title 11." Title 11 refers to the bankruptcy statutes located at Title 11 of the United States Code. The United States Court of Appeals for the Fifth Circuit holds that a case is related to a Title 11 case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Celotex Corporation v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), citing *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987) (following *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)).

*Barletta v. Tedeschi,* 121 B.R. 669, 672 (N.D.N.Y.1990) (property is deemed abandoned by the trustee if it is "not otherwise administered at the time of the closing of a case," citing Title 11 U.S.C. § 554(c)). Therefore, this court finds that the Bankruptcy Trustee has abandoned this claim, that it is no longer part of the bankruptcy estate, and that the plaintiffs have standing to proceed with this lawsuit.

## II. *PERTINENT FACTS*

On November 7, 1994, the plaintiff John Shirley sustained a fracture of the left femur. On November 11, 1994, the defendant W. Thomas McCraney, Jr., M.D. performed surgery to correct the fracture, inserting an intra-medullary Russell–Taylor Rod which was locked proximately and distally to stabilize the femur. The plaintiff John Shirley suffered from various medical conditions at the time of his surgery. Shortly after the procedure to correct his fractured femur had been completed, John Shirley suffered abdominal pain and nausea, symptoms which eventually were relieved by a cholecystectomy (gall bladder removal). John Shirley also suffered from a condition called osteogenesis imperfecta (imperfect bone growth),[3] and his physical therapy was limited to non-weight bearing techniques to avoid aggravating that condition. Then, by December of 1994, John Shirley began suffering pain and "popping" in his thigh, and, by December 21, 1994, he began to suffer complications with the femur fracture. John Shirley consulted new physicians who tried surgically to reconstruct his proximal femur, and when this failed, they resorted to resection of the fracture.

After the plaintiffs' complaint was removed to federal court, original counsel was permitted to withdraw and new counsel was substituted. The substituted counsel later sought to withdraw from the case. The deadline for designating experts passed on November 17, 1997, and the plaintiffs made no attempt to produce an expert until March 12, 1998, naming a Dr. Lazaro Guerra. This court denied the defendants' motion to strike this expert, but required the plaintiffs to provide the required information regarding this expert's testimony not later than May 25, 1998. The only supplementation offered by the plaintiff came on May 22, 1998, in the form of a letter which stated simply that Dr. Guerra has testified in other cases, that he is a practicing orthopedic surgeon, and that his fee is $225.00 per hour. The letter says nothing about Dr. Guerra's theory of this case. Particularly, the letter offers no opinion regarding how Dr. Guerra might conclude that Dr. McCraney may have violated the standard of care. Thus, the plaintiff has presented no expert testimony to support his claim of medical malpractice.

## III. *ANALYSIS*

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.,* 95 F.3d

---

**3.** According to the Department of Orthopaedics and Sports Medicine at the University of Washington, Osteogenesis Imperfecta (OI) is a group of inherited disorders in which the most common feature is bones that break easily. OI results from an alteration either in the chemical makeup or production of collagen. Collagen is the protein "glue" that holds the body's tissues together and gives strength to bones, and it is the major protein in bone.

396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). Further, facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Rule 56(c) further requires that the Court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 106 S.Ct. 2505; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a Motion for Summary Judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988).

### B. Applicable Law

This lawsuit, removed to this court pursuant to Title 28 U.S.C. § 1334 and transferred to the United States Bankruptcy Court is an adversary proceeding which falls squarely within the non-core category because it relies upon state law, without reference to bankruptcy law. *See Green v. Bachner, Tally, Polevoy & Misher (In re Green)*, 200 B.R. 296, 298 (S.D.N.Y.1996) ("[a]n action that does not depend on the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction is non-core."); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 399 (S.D.N.Y.1986) (non-core proceedings consist of claims arising under traditional state law which must be determined by state law). Title 28 U.S.C. § 157(5) provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." Thus, the applicable law is provided by the state from which this case was removed, Mississippi, wherein lies the district where the plaintiffs' medical malpractice claim arose.

## C. The Medical Malpractice Claim

■ Under Mississippi law, in order to establish a case of medical malpractice, the plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony, (2) identifying and articulating the requisite standard of care, and (3) establishing that the defendant physician failed to conform to the standard of care, (4) then must prove that the physician's noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of the plaintiff's damages. *Ladner v. Campbell*, 515 So.2d 882, 887–88 (Miss.1987). "Mississippi case law demands that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care." *Sheffield v. Goodwin*, 740 So.2d 854, 856 (Miss.1999), citing *Travis v. Stewart*, 680 So.2d 214, 218 (Miss.1996)(quoting *Phillips v. Hull*, 516 So.2d 488, 491 (Miss.1987)).

In the instant case the plaintiffs have no expert testimony to present to the court in support of their medical malpractice claim. Moreover, as noted by the defendants, the deposition of Dr. Guerra presents his view on how John Shirley's fracture should have been treated, a matter of professional judgment. Although given the opportunity to say so, say defendants, Dr. Guerra did not identify and articulate the requisite standard of care, or establish that the defendant Dr. McCraney failed to conform to that standard of care. Defendants submit the following excerpt from Dr. Guerra's deposition where he was asked the following question: "And although you have some opinions that you think could have given better results, you can't say that the method that [Dr. McCraney] utilized constituted a violation of the standard of care, can you? Dr. Guerra replied, 'correct.'"

The plaintiff has suggested to this court that the deposition of the defendant Dr. McCraney would supply a basis for expert testimony. This court does not agree, noting that Dr. McRaney's testimony presents what might have caused or what could have aggravated the plaintiff John Shirley's fracture such as physical therapy, maneuvering onto a bed pan, slipping or tripping, simple muscle stress, soft bones, or just getting out of bed (see pages 49 through 51 of Dr. McCraney's deposition). This court considered other portions of Dr. McCraney's testimony regarding John Shirley's non-load bearing physical therapy, and finds nothing to support a claim that Dr. McCraney deviated from an articulated standard of care for the surgery he performed. Therefore, this court shall grant the defendants' motion for summary judgment on the question of negligence.

## D. The Matter of Informed Consent

■ The absence of an expert witness to testify that Dr. McCraney was negligent clearly leads to this court's grant of summary judgment to the defendants on the negligence question. But what about the question of informed consent? In his deposition Dr. McCraney stated that he fully informed John Shirley of the procedures to be performed and the risks involved. The plaintiff states in his affidavit either that he was not informed of the risk involved or he did not fully understand them.

■ To recover on a claim of insufficient information to give informed consent, a plaintiff must show that the doctor failed to disclose sufficient information about the proposed operation to constitute informed consent. *Ross v. Hodges*, 234 So.2d 905, 909 (Miss.1970). Such information must include the known risks of a procedure, which would be material to a prudent patient in determining whether to undergo suggested treatment. There must also be a causal connection between the breach of

the duty by the defendant and the injuries to the plaintiff. To determine the existence of a causal connection, the question is whether a reasonably prudent patient, fully advised of the material known risks, would have consented to the treatment. *Reikes v. Martin,* 471 So.2d 385, 392 (Miss. 1985); *and see Latham v. Hayes,* 495 So.2d 453, 458 (Miss.1986). No expert testimony is needed to prove what communications transpired between the doctor and the patient. *Cole v. Wiggins,* 487 So.2d 203, 206–07 (Miss.1986). However, a plaintiff must show not only that a reasonable patient would have withheld consent had he been properly informed of the risks, alternatives, and so forth, but also he must show that the treatment chosen and administered by the physician was the proximate cause of the plaintiff's worsened condition. In other word, the plaintiff still must show that he would not have been injured had the physician exercised the appropriate standard of care. This requires expert testimony that the defendant's conduct, not the patient's original illness or injury (osteogenesis imperfecta), led to the worsened condition. *Palmer v. Biloxi Regional Medical Center, Inc.,* 564 So.2d 1346, 1364 (Miss.1990).

Therefore, in the instant case, inasmuch as expert testimony would be required to establish whether osteogenesis imperfecta or the insertion of the rod in John Shirley's femur caused his worsened condition, and inasmuch as the plaintiffs have no such expert testimony to present, this court shall grant the defendants' motion for summary judgment on the question of informed consent.

## IV. *CONCLUSION*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. This court has consulted the applicable law to ascertain the material factual issues, *King v. Chide,* 974 F.2d 653, 655–56 (5th Cir. 1992), and then has reviewed the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Lemelle v. Universal Manufacturing Corporation,* 18 F.3d 1268, 1272 (5th Cir.1994); *FDIC v. Dawson,* 4 F.3d 1303, 1306 (5th Cir.1993), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). This court concludes therefrom that the defendants W. Thomas McCraney, Jr., M.D. and Capital Orthopaedic, P.A. are entitled to summary judgment, and that the above styled and numbered cause must be dismissed. A separate judgment shall be entered in accordance with the local rules.